## McCLUNG *v.* THE STATE.

No. 16889. JANUARY 10, 1950. REHEARING DENIED FEBRUARY 17, 1950.

*R. I. Stephens* and *John B. Spivey,* for plaintiff in error.

*Eugene Cook, Attorney-General, W. W. Larsen, Solicitor-General, Robert E. Andrews, L. F. Watson,* and *E. L. Rowland,* contra.

ALMAND, Justice. Harry T. McClung was jointly indicted with Drew S. Phillips for the offense of murder, it being charged that on October 31, 1948, they killed one L. M. Barron by shooting him with a pistol. McClung was separately tried and found guilty of murder, with a recommendation of mercy. His motion for a new trial as amended was overruled, and the case is here on exceptions to that order.

■ The first special ground of the motion for new trial complained that the court erred in the admission of certain testimony of Eddie Carberry. This witness, over objection, was permitted to detail the facts growing out of the arrest of the defendant and Phillips on November 17, 1948. The witness, after relating the fact that the police department of Miami, Florida, had been advised by the police authorities of Dublin to be on the lookout for Phillips as being one of two persons who participated in the killing of Barron, testified that he received a radio call as to the robbery of a taxicab driver in Miami on the night of November 17, and, after reciting how he and other Miami officers apprehended the taxicab in which the defendant and Phillips were riding, was permitted by the court to state that the taxicab had been stolen, and the defendant and Phillips were arrested on suspicion of stealing the taxicab and robbing the driver. To this part of the testimony, counsel for the defendant objected, on the ground that the State was undertaking to prove a second offense which was committed in another jurisdiction, and the fact that he was arrested for another offense was inadmissible and prejudicial to the defendant on trial.

The evidence shows that the killing of Barron occurred on October 31, 1948, and that there were no eyewitnesses to the killing. Phillips was identified as one of the two persons participating in the killing, and immediately thereafter the police of Miami were advised to be on the lookout for him. The defendant, in his written confession as well as in his statement to the jury, stated that immediately after the killing of Barron he and Phillips went to Miami, and having knowledge that the police were on the lookout for Phillips, the defendant and Phillips concealed themselves, and on the night of the arrest, in endeavoring to leave Miami in order to escape arrest, they engaged the taxicab, and using the pistol which they had taken from the

deceased Barron, they robbed the driver and took the taxicab, and at the time of their arrest they were endeavoring to carry out their purpose of evading the officers of the law.

"The flight of the accused, the time when and the place where arrested, the manner of the arrest, how he was armed, and whether he resisted, and all the circumstances connected with the arrest, we consider proper evidence to be submitted to the jury to be weighed by them for what they are worth." *Wayne v. State*, 56 *Ga.* 113 (5), 119. Where evidence is relevant for the purpose of showing flight, it will not be excluded because it incidentally shows the commission of other crimes. *Bines v. State*, 118 *Ga.* 320 (2) (45 S. E. 376); *Wilson v. State*, 173 *Ga.* 275 (2) (160 S. E. 319); *Johnson v. State*, 188 *Ga.* 771 (2) (4 S. E. 2d, 639); *Mimbs v. State*, 189 *Ga.* 189, 192 (2) (5 S. E. 2d, 770). When, in a legal investigation, information and similar evidence are facts to explain conduct and ascertain motives, they may be admitted in evidence, not as hearsay, but as original evidence. Code, § 38-302; *Bryant v. State*, 191 *Ga.* 686 (4) (13 S. E. 2d, 820); *Phillips v. State*, ante, 418.

■ Special ground 2 complains that the court erred in admitting in evidence a written statement or confession made by the defendant, over objection that the statement was irrelevant and prejudicial. The record shows that the defendant made the written statement, which was signed by him in the presence of the witnesses, giving in full a detailed account of the killing of Barron; and a prima facie showing was made by the State that this statement was freely and voluntarily made. The record further shows that the statement of the defendant to the jury in many of the essential details corroborated the written confession. A confession reduced to writing, when made freely and voluntarily, is admissible in evidence. *Mincey v. State*, 187 *Ga.* 281 (1) (200 S. E. 144); *Claybourn v. State*, 190 *Ga.* 861 (1, a, b) (11 S. E. 2d, 23); *Russell v. State*, 196 *Ga.* 275 (2, 3) (26 S. E. 2d, 528). The court did not err in admitting the written statement.

■ It is contended that a new trial should be granted, because the evidence failed to show that the defendant participated either in the killing of Barron or in the felonious design of Phillips, who actually did the killing.

Where one jointly indicted with another for murder is on trial, if there is no evidence of conspiracy and the person on trial did not inflict the mortal wound, a verdict of guilty can not stand. *Fudge* v. *State,* 148 *Ga.* 149 (1) (95 S. E. 980). Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of the crime, unless such person participated in the felonious design of the person killing. *Brooks* v. *State,* 128 *Ga.* 261 (57 S. E. 483). However, it is not necessary that the crime of murder should be a part of the original design; but it is enough that it be one of the incidental and probable consequences of the execution of the design of the parties, and should appear at the moment to one of the participants to be expedient to the common purpose. In such case, the intent and act of the slayer is imputable to the other party, though he be merely present and he himself does not inflict the mortal wound. *Gore* v. *State,* 162 *Ga.* 267 (1a) (134 S. E. 36)'. Where one is present at the time of the homicide, the question whether or not the defendant participated in the felonious design of the person killing is one to be determined by the jury from all the facts and circumstances of the case. *Futch* v. *State,* 137 *Ga.* 75 (3a), 77 (72 S. E. 911). A conspiracy may be shown by circumstantial evidence as well as by direct testimony. *Simmons* v. *State,* 181 *Ga.* 761 (1) (184 S. E. 291), and cases cited.

The evidence in this case shows that on the night of the killing, about 8:30 p. m., the deceased was in his place of business alone, and the defendant, with Phillips, went into such place of business. The deceased in his dying statement stated that he asked them what did they want, and they told him to open the safe, and he, the deceased, attempted to fire his pistol, which snapped and did not go off, and the tall one, later identified as Phillips, shot him. In the written confession or statement, and in his statement to the jury, the defendant related how the two immediately got in an automobile and drove away from the scene and returned to Miami. In his written confession, the defendant stated that he went into the deceased's store for the purpose of buying a half pint of whisky (it appears from the record that the deceased did not operate a licensed liquor store), and

that Phillips stepped out in front of the car, and pulled a gun and said to the deceased, "Alright, Pop, this is it." The defendant said to Phillips, "Drew, cut that out and let's go," and at that time the deceased had opened the cash register, and after he, the defendant, had called to Phillips the second time to "cut it out and go," and as Phillips started towards the defendant, the deceased pulled a gun and he and Phillips started firing. Phillips then went outside and, as the deceased staggered towards the defendant, the defendant grabbed his hand and said, "Pop, give me the gun," and the defendant, knowing that the deceased had been shot at that time, took the gun and he and Phillips got in the automobile and drove away. The defendant in his statement stated that he did not know how much money they got from this place, but did know that the deceased, after opening the cash register, gave Phillips some money. He further stated that he later gave Phillips the pistol which he had taken from the deceased, and that Phillips turned over to him the pistol with which he had killed the deceased. The defendant related in detail how he tried to dispose of the Phillips pistol in Miami, and sought to avoid arrest. In his statement, he admitted that the pistol that was used to hold up the taxicab driver and rob him was the pistol that he had taken from the deceased Barron. The defendant in his written confession and in his statement to the jury denied that he did or said anything at the time of the killing to aid or abet Phillips in the killing, but on the contrary endeavored by word of mouth to prevent Phillips from shooting the deceased.

The jury, from all the facts and circumstances before them, could properly draw the conclusion that the defendant participated in the unlawful design of Phillips. The fact that the defendant took the pistol from the deceased and fled with Phillips from the scene of the crime, and until the day of his arrest was seeking to avoid detection and arrest, and while trying to continue his flight participated in the robbery of another person, and the fact of his flight and mental attitude, were all circumstances which the jury could treat as illustrating the intent and design of the defendant at the time of the homicide.

The court fully charged the jury on the principle of law relating to conspiracy and the law as to principals in the first and

second degrees, and that the jury would not be authorized to convict the defendant unless they believed beyond a reasonable doubt that the person alleged to be the absolute perpetrator would himself be guilty of murder.

The evidence fully supported the verdict, and there was no error in overruling the motion for new trial as amended.

*Judgment affirmed. All the Justices concur, except Wyatt and Head, JJ., who dissent.*