## A98A2324. REYNOLDS v. THE STATE.
(508 SE2d 674)

ELDRIDGE, Judge.

Defendant James Reynolds appeals his January 1998 conviction for robbery, aggravated assault, kidnapping with bodily injury, and simple battery. We affirm.

Viewed in the light most favorable to the verdict, the facts are as follows: At approximately 3:30 p.m. on Sunday, September 1, 1996, Reynolds, Raymond Sarluca, Michael Lettner, and Chris Jones left a party at Jones' home in order to get some food at the grocery store. Jones, who was driving, and Lettner were in the cab of the truck, while Reynolds and Sarluca rode in the back. At some point, Reynolds saw a teenager selling newspapers from a stand and noticed that the boy was counting money. After driving by the stand, Jones briefly stopped the truck, and the men decided to rob the boy. Jones again pulled the truck in front of the stand, and Reynolds jumped out of the back. One of the men asked the boy for a newspaper, and when the boy turned toward the truck, Reynolds picked the boy up and pushed him into the back of the truck. Reynolds climbed back into the truck, and Jones accelerated away from the stand. Reynolds demanded that the boy give him the money, and he hit the boy repeatedly in the face. After robbing the boy, Reynolds ordered the boy to jump from the truck, which was still moving at approximately 25 to 45 mph. When the boy refused, Reynolds picked up the boy by the legs and threw him, head first, over the back of the truck. In the process, the boy managed to grab the tailgate of the truck, but was dragged along the pavement behind the moving truck until he could no longer hang on. He fell to the ground, got up, and attempted to get assistance at a local business. When that failed, he walked back to the newspaper stand and called the police.

In the meantime, Reynolds and his friends went to the grocery store and purchased food; they then returned to the party and conducted a barbeque. During the party, two witnesses overheard Reynolds bragging about the crime to his girlfriend.

Reynolds was arrested on October 2, 1996. At the time of his arrest, Reynolds gave the police a comprehensive statement about the crime. The statement asserted that Lettner and Sarluca were the primary actors in the crimes, but included admissions that Reynolds was an accessory. The statement was read to the jury during trial.

During his incarceration, Reynolds escaped for a brief period of

time. Upon his return to jail, Reynolds shared a cell with Lettner. Reynolds voluntarily drafted a statement in which he admitted being the primary actor in the robbery, kidnapping, aggravated assault, and battery, and he gave the signed statement to Lettner. The statement was read at trial. Lettner and Sarluca separately negotiated pleas and testified against Reynolds at trial.

Reynolds was tried and convicted by a jury in January 1998. His motion for new trial was denied, and he appeals. *Held*:

1. In his first enumeration of error, Reynolds asserts that the evidence was insufficient to support his convictions for kidnapping with bodily injury or aggravated assault, because the State allegedly failed to prove that the use of a deadly weapon, i.e., the moving truck, caused the victim's injuries. See OCGA §§ 16-5-21 (a); 16-5-40 (b). We find that this argument is totally without merit.

(a) Under Reynolds' theory, the victim's injuries were not the result of Reynolds' act of pitching the boy off the truck, but were, instead, "caused by the victim's holding on to the tailgate of the truck and being dragged along the ground a short period of time." As such, Reynolds claims that the kidnapping with bodily injury conviction cannot stand.

However, had the victim not caught the tailgate and, instead, hit the road head first, he may have been more seriously injured or killed. Further, the argument fails to recognize that the crime of kidnapping with bodily injury under OCGA § 16-5-40 (b) does not require the use of a "deadly weapon," but only that an injury — no matter how slight — occur during the kidnapping incident. In that regard, the State presented substantial evidence to show that the victim received bodily injuries during the kidnapping, including "burn marks on his body from being dragged by the truck plus numerous other bruises and abrasions." Accordingly, the evidence was sufficient for a rational trier of fact to find Reynolds guilty of kidnapping with bodily injury beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) As to the aggravated assault conviction, Reynolds' argument ignores the fact that evidence of an *actual* bodily injury is not required to sustain a conviction under OCGA § 16-5-21 (a) (2). See also OCGA § 16-5-20 (a). " 'A person commits the offense of aggravated assault when he assaults: . . . (2) . . . with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.' OCGA § 16-5-21. Although an automobile is not per se a deadly or offensive weapon, it may become one depending on the manner and means of the vehicle's use. *Blalock v. State*, 165 Ga. App. 269, 270 (299 SE2d 753) (1983). The question of whether an automobile, or other instrumentality, has been used so as to constitute a deadly or offensive

weapon is properly for the jury's determination. *Banks v. State,* 169 Ga. App. 571, 572 (314 SE2d 235) (1984); *Quarles v. State,* 130 Ga. App. 756 (2) (204 SE2d 467) (1974). The evidence here was sufficient to enable any rational trier of fact to find the defendant guilty of the offense of aggravated assault of [the victim] beyond a reasonable doubt. [Cits.]" *Spaulding v. State,* 185 Ga. App. 812, 813 (366 SE2d 174) (1988). See also *Cline v. State,* 199 Ga. App. 532 (405 SE2d 524) (1991); *Butler v. State,* 196 Ga. App. 706 (396 SE2d 916) (1990).

2. In his second enumeration, Reynolds asserts that the trial court erred when it allowed the jury to hear evidence that he possessed marijuana at the time of his arrest. See OCGA § 24-9-20 (b). Reynolds was arrested on October 2, 1996, approximately one month after the crimes at issue in this case. At the time of his arrest, Reynolds had a "sack" of marijuana in his pocket and admitted such in his custodial statement to police. This statement, in which Reynolds minimized his involvement in the robbery and kidnapping of the newspaper boy, was read in its entirety to the jury over the objections of defense counsel. In admitting the evidence, the trial court ruled that all of the circumstances surrounding an arrest are admissible "for whatever weight the jury may give them" as part of the res gestae. See *Henry v. State,* 176 Ga. App. 462, 463 (336 SE2d 588) (1985); see also *Dean v. State,* 211 Ga. App. 28, 31-32 (4) (438 SE2d 380) (1993); *Fuqua v. State,* 183 Ga. App. 414, 419 (359 SE2d 165) (1987). The trial court also allowed the arresting police officer to testify that he found the marijuana during a pat-down of Reynolds at the time of the arrest.

Reynolds argues that evidence of his possession of a misdemeanor amount of marijuana should have been inadmissible under this Court's ruling in *Sessions v. State,* 207 Ga. App. 609, 610 (2) (428 SE2d 652) (1993). *Sessions* involved testimony about previous similar transactions by a defendant who was on trial for entering an automobile. However, in addition to evidence describing the similar transactions, the trial court admitted evidence of alleged drug and weapon possession by the defendant at the time of the similar transactions. Id. This Court held that such evidence should have been redacted from documentary evidence and that witnesses should have been instructed to limit their testimony to the similar crimes only. Id.

Under this rationale, it follows that evidence of criminal acts that occurred at the time of the defendant's arrest in similar offenses is inadmissible if such acts are unrelated to the crimes for which the defendant is being tried. However, *Sessions* is not authority for the exclusion of evidence of other crimes *at the time of arrest* for the case on trial and will not be extended. It is well settled that all circumstances connected with the accused's arrest are admissible, even though they incidentally put his character in issue. *McClung v. State,*

206 Ga. 421, 423 (1) (57 SE2d 559) (1950); *Louis v. State*, 230 Ga. App. 897 (497 SE2d 824) (1998); *Hyatt v. State*, 210 Ga. App. 425 (436 SE2d 540) (1993); *Blackshear v. State*, 199 Ga. App. 839 (406 SE2d 269) (1991); *Jimerson v. State*, 163 Ga. App. 54 (1) (293 SE2d 513) (1982).

However, even if treated as error, in light of the overwhelming evidence of Reynolds' guilt in this case and the exceptionally serious nature of the charges, as compared to the relatively minor drug possession allegation, we find that it is highly probable that this error did not contribute to the jury's guilty verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Crawford v. State*, 230 Ga. App. 568 (497 SE2d 45) (1998); *Query v. State*, 217 Ga. App. 61, 63 (3) (456 SE2d 704) (1995); *Willis v. State*, 199 Ga. App. 658 (405 SE2d 739) (1991); *Coney v. State*, 198 Ga. App. 272, 273 (2) (401 SE2d 304) (1991); *Lance v. State*, 191 Ga. App. 701, 704 (4) (382 SE2d 726) (1989). Accordingly, reversal is not required.

3. Reynolds also challenges the trial court's jury instructions on aggravated assault. The trial court initially charged the jury on aggravated assault with a deadly weapon. However, the trial court then qualified the instruction by charging on simple assault. After the jury was sent to deliberate, the State pointed out the problem with the charge. The trial court recalled the jury and instructed them that a moving truck is not a deadly weapon per se, and that they must consider all of the evidence and decide whether the moving truck was a deadly weapon for the purpose of convicting Reynolds of aggravated assault in this case. The jury deliberated eighteen minutes before returning guilty verdicts on all four counts.

"Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury[,] even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. We do not believe that the recharge in this case would mislead a jury of average intelligence, and we find no error." (Citations and punctuation omitted.) *Taylor v. State*, 195 Ga. App. 314, 315 (393 SE2d 690) (1990).

4. Finally, Reynolds asserts that he was denied effective assistance of counsel at trial. "A defendant bears the burden of establishing that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). The trial court's finding of effectiveness must be upheld unless clearly erroneous. *Powell v. State*, 210 Ga. App. 409, 414 (6) (c) (437 SE2d 598)

(1993)." *Capers v. State*, 220 Ga. App. 869, 871 (470 SE2d 887) (1996). See also *McCord v. State*, 268 Ga. 842 (493 SE2d 129) (1997).

(a) Reynolds first asserts that trial counsel failed to utilize any peremptory strikes against potential jurors. However, the trial court, prosecutor, and defense counsel all questioned the jurors extensively during voir dire. None of the jurors indicated that they were biased or otherwise would be unable to decide the case based upon the evidence presented. Defense counsel testified during the hearing on the motion for new trial that the jurors were qualified and "I would not have left anybody on the panel that I thought would be more detrimental than those that might have gotten on the panel anyway." Accordingly, trial counsel's decision not to utilize his peremptory strikes appears to have been strategic in nature and is not ineffective assistance per se, as suggested by Reynolds.

(b) While trial counsel's decision to refer to Reynolds as a "poor wretched slob" during closing arguments seems inappropriate in hindsight, counsel testified at the motion hearing that the use of such language was a trial strategy to encourage the jury to acquit Reynolds of kidnapping with bodily injury, the most serious charge. He testified that the evidence was overwhelming that Reynolds participated in these crimes and "I'd be a fool to stand up there and try to make this boy look like something other than what he was. And I think that it's always best to come clean with the jury. The jury is made up of twelve people who are not collectively fools and this boy looked bad through that trial. And there was no doubt in my mind they were going to convict him, probably of everything but certainly of a great deal of it. And I just went ahead and tried to trump that card and argue about the kidnapping. As I said, that was my strategy throughout the whole trial and I think I would have been at odds with my strategy had I tried to make him look like a model citizen. . . . And I used those terms, wretched, slob, whatever, sorry, because I'm sure that's what the jury thought of him and if I was going to have any empathy from the jury for that one thing that I was trying to do, I had to tell it like it was."

"Counsel has wide latitude in closing argument, in choice of theory to be advanced, in choice of style, tactics, language. The court will not second-guess the attorney who has undertaken the responsibility for representing his clients in their fight against the charges brought. As the Supreme Court has said: 'In closing arguments each side is permitted to make any argument which is reasonably suggested by the evidence.' *Durden v. State*, 250 Ga. 325, 329-330 (297 SE2d 237) (1982). . . . The closing argument must be read in its entirety to ascertain whether counsel failed to meet the [Sixth Amendment] constitutional standards." *Kornegay v. State*, 174 Ga. App. 279, 281-282 (329 SE2d 601) (1985). While trial counsel's choice of words appears

excessive when taken out of context, his argument to the jury, read as a whole, clearly demonstrated that counsel had not "joined the [S]tate in asking for conviction or that he had abandoned the defendant['s] cause. Quite the contrary." Id. at 282.

(c) Although Reynolds claims that trial counsel failed to communicate the State's plea offers, such failure is not demonstrated by the record. As to counsel's alleged misunderstanding regarding potential penalties for kidnapping and aggravated assault during plea negotiations, Reynolds is unable to demonstrate harm when the record shows that a subsequent offer for one life term for a kidnapping guilty plea was relayed to and rejected by Reynolds.

(d) Finally, Reynolds' remaining examples of alleged ineffectiveness either were explained during the hearing as trial strategy or are not supported by the record. After hearing evidence and argument at the motion hearing, the trial court determined that Reynolds failed to demonstrate ineffective assistance of counsel. We agree and find no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998.

*William J. Mason,* for appellant.

*J. Gray Conger, District Attorney, E. Wayne Jernigan, Jr., Assistant District Attorney,* for appellee.