A99A0146, A99A0147, A99A0148. CARTER v. THE STATE
(three cases).
(516 SE2d 556)

McMURRAY, Presiding Judge.

In Case No. A99A0146, defendant Thomas M. Carter was charged in a special presentment with one count of arson in the first degree, in that on March 14, 1993, he intentionally caused damage to the dwelling house of his ex-wife, Dana Carter, without her consent, by means of fire. Defendant was subsequently charged in Case No. A99A0147 with four counts of influencing a witness in violation of OCGA § 16-10-93, for communicating threats of injury to witnesses in a criminal charge of stalking then pending against defendant in the State Court of Cherokee County. In Case No. A99A0148, defendant was charged with two counts of false swearing in violation of OCGA § 16-10-71; two counts of giving a false statement in connection with his application to be represented at county expense as an indigent; and one count of theft of services. After three separate jury trials, defendant was found guilty of all counts. These three separate appeals are hereby consolidated for disposition in a single appellate decision. *Held*:

### Case No. A99A0146

1. Defendant first contends the trial court erred in "fail[ing] to release funds wrongly appropriated from and belonging to the Defendant so that he could mount an adequate defense."

In defendant's brief, there is but a single reference to the transcript in support of this enumeration. See Court of Appeals Rule 27 (c) (3) (i). There, after the jury was selected for his arson trial, defendant asked for reconsideration of an alleged prior court order denying defendant's application "for funds to hire an investigator and an expert witness." Specifically, defendant asked that those funds be made available either from the county or from defendant's private account *"if there is any money left available.* And if that is granted, that the case be continued to give the expert time to do his analysis." (Emphasis supplied.) Defendant conceded that, three weeks earlier, when he moved for funds to pay attorney fees, he did not then request funds for an expert fire investigator. The trial court declined

to continue the case and denied defendant's motion for reconsideration.

(a) Although defendant strenuously argues the trial court arbitrarily confiscated and capriciously withheld defendant's own money from him, the transcript authorizes the conclusion that such sums as were in defendant's frozen account had already been paid out for attorney fees by the trial court before defendant ever requested a disbursement for an arson investigator. Defendant failed to show that there were in fact funds available in the account as of the morning of trial.

(b) Defendant further failed to show on appeal he was entitled to an arson investigator as an indigent.

> [T]he grant or denial of a motion for appointment of an expert witness lies within the sound discretion of the trial court, and where the defendant's conviction [does] not rest entirely on the [S]tate's expert evidence, and the [S]tate's expert [is] not shown to be incompetent or biased, . . . the trial court [does] not abuse its discretion in denying such motion. *Jackson v. State*, 249 Ga. 751, 755 (3) (295 SE2d 53) (1982).

*Carter v. State*, 252 Ga. 502, 504 (2) (315 SE2d 646).

In the case sub judice, defendant's first degree arson conviction is not based solely upon expert opinion evidence. Rather, the State adduced proof that, on the night before the fire, Dana Carter, defendant's ex-wife, left her home on Cons Creek Road securely locked to take her son to stay at her mother's home, during an anticipated snow storm. Defendant quarreled with Dana Carter over the telephone, and he told her she "would need to get a new house and a new car." The next morning Dana Carter received a call from the sheriff's department informing her that her house was on fire. A neighbor, Bobby Baldwin, saw defendant walking away from Dana Carter's house, and then some people drove into Bobby Baldwin's yard asking whether Bobby Baldwin had a telephone, because that house nearby was on fire. Craig Ross, formerly a firefighter with the City of Ball Ground, identified defendant as the man who, on March 14, flagged him down and wanted a ride as far as Cons Creek Road from Highway 372. Ross dropped defendant off about 12:00 p.m. and proceeded home for lunch. At 1:00 p.m., the scanner went off with the fire tones from Ross' station, announcing a fire on Cons Creek Road. When Ross arrived at the fire, he entered through an open door at the basement, to determine whether anyone was inside the structure. He found no one inside but recognized defendant among the bystanders outside as the man to whom he had recently given a ride.

Steven L. Yoder, a firefighter with Cherokee County Fire & Rescue, saw defendant walking away from the burning house. In Yoder's experience, this fire was unusual, in that there was a fire on the outside along the front porch and inside the house as well, but there was no fire trail from the front porch to the inside of the house. The windows were still all intact, and the siding was still on the house. In Yoder's expert opinion, this represented two separate fires.

John Ray Clark lives a quarter-mile from the Carter home. Clark saw defendant walking away from the direction of the burning residence. Defendant ran to Clark's truck and asked if he could give him a ride to town. When Clark asked defendant if he knew his house was on fire, defendant replied, "no, that he didn't." Clark asked, "Do you know if Dana and Caleb are in the house?" And defendant said he "didn't think so." So Clark said, "Well, don't you think you ought to go back down and see the house?" And defendant said that he guessed he should. Mr. Clark noticed that defendant was not dressed for the cold weather, wearing only a pair of loafers without any socks, blue jeans and a plaid shirt. There was a cut on one of defendant's hands, which were very dirty looking. Defendant seemed very calm upon being told his house was burning; he showed no emotion.

Detective Thomas Fletcher Harris, Jr., an arson investigator for Cherokee County, noticed a rock under the first window on the right-hand side of the porch. Inside, there was broken glass on the floor, directly under the window. This glass was clear, indicating it was broken out before the fire. He further observed that one couch in the living room was totally burned while the one next to it was hardly burned at all, from which circumstance, Detective Harris deduced there must have been an accelerant or some kind of extra fuel load used there for it to burn so. Specifically, it seemed like there had been something put under the couch because its underside was burned. It looked like there was a pour pattern where the couch was. From the burn pattern on the stairway leading to the basement, Detective Harris concluded an accelerant or some kind of fuel load such as newspaper was used in that area. In Detective Harris' opinion, the house burned down because someone put an unidentified liquid that was an accelerant at certain points in the house.

Special Agent Randall Lynn Kersey, an arson investigation instructor with the Georgia Bureau of Investigation, testified that there is a very natural progression to any fire. Fires are generally of a single origin, and then they progress upward and outward very predictably from that. Patterns on the floor indicating a spill or a pour are obviously inconsistent with a naturally progressing fire. When he inspected the Carter residence, Special Agent Kersey found a very definitive pattern that would be consistent with something having been poured and distributed on the floor leading in the direction to

the entrance of the bedroom. In his opinion, at least three separate fires were intentionally set, using an accelerant. But Special Agent Kersey confirmed he had no physical or scientific evidence that it was defendant who started the fire.

> Three things are necessary to sustain a conviction for arson: that the real property alleged in the indictment was in fact burned, that its cause was a criminal agency, and that the defendant was that criminal agency. The latter may be proved by circumstantial evidence.

(Citations and punctuation omitted.) *Bragg v. State*, 175 Ga. App. 640 (1), 641 (334 SE2d 184). Viewed in the light most favorable to the jury's verdict, proof that defendant caused these fires comes from his proximity to the incendiary blaze, started after forced entry to his ex-wife's home. Defendant recently fought with his former wife, and he was jealous over her new boyfriend. He threatened that she would soon need a new house and new car, and he knew that his child would not be in the home that weekend. Thus, while the State's expert opinion evidence is crucial to the determination that the fire was a criminal enterprise and not accidental or providential, the State's expert opinion evidence is not the sole evidence against defendant. Consequently, the trial court in this case did not abuse its discretion in refusing to continue the case and appoint an expert investigator, in response to defendant's tardy request. See *Carter v. State*, 252 Ga. 504 (2), supra.

2. Next, defendant contends the trial court erred in admitting photographs and testimony based upon a second investigation of the burn site, some five months after the fire. He argues that, absent a warrant or consent the testimony of a fire inspector relative to evidence obtained from an invalid inspection is not admissible.

It is undisputed that defendant was under court order to deed over his interest in the property to the victim, defendant's former spouse, under the terms of their divorce decree. Defendant was also under a restraining order to prevent him from coming to the victim's house. Pretermitting whether the victim, Dana Carter, ratified the subsequent non-consensual search of her burned home, we hold defendant in the case sub judice had no reasonable expectation of privacy or other protected interest implicated by the subsequent investigation of the burn site and consequently has no standing to challenge the allegedly unlawful second search of the victim's property. See *Dennis v. State*, 166 Ga. App. 715, 717 (305 SE2d 443). The trial court did not err in admitting the photographs and testimony objected to in this enumeration.

## Case No. A99A0147

3. In Case No. A99A0147, defendant was charged with four counts of influencing a witness, in violation of OCGA § 16-10-93. In his first enumeration he contends the trial court erred in failing to direct a verdict as to each count.

(a)

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489).

(b)

> A person who, with the intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, in any administrative proceeding, or before a grand jury, communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness or . . . of any relative or associate of the witness . . .

commits the offense of influencing a witness in violation of OCGA § 16-10-93 (a).

In the case sub judice, the four victims of defendant's intimidation were his former wife, Dana Carter, and Sergeant Mike Barber, Detective Cathy Carter, and Officer Mike Johnston of the Canton Police Department. Three of these four victims were listed as witnesses on an accusation charging defendant with stalking his former wife on June 11, 1993. While in custody, defendant told Deputy Charles Jeffrey Shields of the Cherokee County Sheriff's Office that "Officer Barber had taken his [defendant's] wife, was sleeping with her and had put him in jail. . . . And then he said he would just kill them."

Whether an act is committed with the requisite criminal intent is a question for the jury "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. See *Blanton v. State*, 191 Ga. App. 454 (1), 455 (382 SE2d 133).

*Cornelius v. State*, 213 Ga. App. 766, 768 (1) (445 SE2d 800). In the case sub judice, the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdicts that defendant threatened the lives of Dana Carter and Sergeant Barber with the intent to deter their testimony in the pending stalking case, as alleged in Counts 1 and 2.

(c) Detective Cathy Carter with the City of Canton Police Department obtained a warrant for defendant's arrest on the charge of terroristic threats, based on his statements that he had hired an expert marksman to shoot his former wife and Sergeant Mike Barber. On December 13, 1993, the grand jury returned an indictment charging defendant with felony obstruction of a law enforcement officer and with intimidation of a court officer, listing "Inv. C. Carter" as the first witness. On Christmas Day, 1993, defendant

pulled into [Ms. Carter's] driveway and just backed up and left. . . . [A]fter arresting someone [like defendant] and after hearing the threats that he had made . . ., it really, really scared [Ms. Carter]. [Her] son is 14, stays home sometimes by himself until [Ms. Carter] gets home from work. And to know that . . . this person [defendant] knows where [Ms. Carter] live[s] . . . really upset [her].

In our view, this evidence of defendant's menacing presence at the home of a potential witness was sufficient, beyond a reasonable doubt, to authorize the jury's verdict that defendant indirectly communicated a threat to Ms. Carter's person and her property with the intent to deter her testimony in the pending obstruction charge, as alleged in Count 3 of the indictment.

(d) Defendant sent a letter to Canton Police Chief Bradley L. Pope accusing Officers Cathy Carter, Mike Johnston and Mike Barber of "lies under oath when the warrants were taken and each time was with the intent to have [defendant] remain in jail as a supposed violation of [his] bond." Defendant urged that these officers should take a polygraph test or submit to suitable discipline from Chief Pope. This evidence was sufficient, beyond a reasonable doubt, to authorize the jury's verdict that defendant communicated a threat to the employment of the witnesses listed on the stalking accusation,

with the intent to deter their free, full and truthful testimony as alleged in Count 4 of the indictment. Thus, in no instance did the trial court err in refusing to direct a verdict of acquittal on any of these four charges.

4. Next, defendant contends that trial counsel was ineffective when he failed to preserve his objection to the admission of the stalking warrant and in failing to reserve his exceptions to the trial court's jury instructions. But for aught that appears of record, defendant never pursued this special ground for a new trial before the trial court.

"By proceeding directly with this appeal without pursuing an evidentiary hearing on trial counsel's alleged ineffectiveness, we conclude the issue has been procedurally defaulted and presents nothing for review. *Glover v. State*, 266 Ga. 183 (2) (465 SE2d 659)." *Gantt v. State*, 229 Ga. App. 207, 209 (3) (493 SE2d 608).

### *Case No. A99A0148*

In Case No. A99A0148, Counts 1 and 3 charged respectively that, on August 12, 1993, and then a year later on August 5, 1994, defendant did "make a false statement regarding income and his other assets when he executed . . . an application for appointed counsel in Superior Court . . ., knowing that it purported to be an acknowledgment of a lawful oath. . . ." Counts 2 and 4 alleged that, on August 12, 1993, and on August 5, 1994, defendant did knowingly and wilfully conceal a material fact, to wit: that he had additional assets, and made a false statement, to wit: "that the accused did not have any assets other than those indicated in an application for appointed counsel," in a matter within the jurisdiction of the Pretrial Services Division of the Superior Court of Cherokee County. Count V alleged theft of services, in that, between August 12, 1993, and October 8, 1994, defendant did "knowingly and wilfully obtain services of an attorney, which are only available for compensation, by means of deception and with the intent to avoid payment. . . ." Defendant enumerates the denial of directed verdicts as to all five convictions.

5. As to Counts 1 and 3, defendant contends he cannot be guilty as charged because his allegedly false swearing involved a judicial proceeding; hence, he is guilty of perjury. We disagree.

> A person . . . who executes a document knowing that it purports to be an acknowledgment of a lawful oath or affirmation commits the offense of false swearing when, in any matter or thing *other than a judicial proceeding*, he knowingly and willfully makes a false statement.

(Emphasis supplied.) OCGA § 16-10-71 (a).

Perjury, as proscribed by OCGA § 16-10-70 (a), " 'is the wilful assertion as to a matter of fact, opinion, belief, or knowledge, made by a witness in a judicial proceeding as part of his evidence. . . given in open court or in an affidavit. . . .' " *Herring v. State*, 119 Ga. 709, 715 (1) (46 SE 876). "A 'judicial proceeding' is a proceeding in a legally constituted court." *Garrett v. State*, 18 Ga. App. 360, hn. 1 (89 SE 380). In the case sub judice, the false statements defendant affirmed in his application to Cherokee County Pre-Trial Services for a County-appointed attorney were not given as evidence in a judicial proceeding, even though those statements were undeniably ancillary to a judicial proceeding. See *Plummer v. State*, 90 Ga. App. 773, 780 (84 SE2d 202). The trial court did not err in failing to direct verdicts of acquittal on this ground as to Counts 1 and 3.

6. As to his convictions on Counts 2 and 4 for violating OCGA § 16-10-20 by concealing a material fact, i.e., additional income and assets, defendant contends in a prolix argument that the State failed to prove the materiality of his omissions. At sentencing, however, the trial court merged Count 2 into Count 1 and merged Count 4 into Count 3. Consequently, this enumeration is rendered moot. OCGA § 16-1-7 (a); *Joachim v. State*, 263 Ga. 816, 817 (2) (440 SE2d 15).

7. Pursuant to OCGA § 16-8-5, "A person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations, entertainment, or the use of personal property which is available only for compensation." The gist of this offense is deceptively obtaining services with the intent to avoid payment. *Johnson v. State*, 159 Ga. App. 497, 498 (283 SE2d 711). Defendant argues the evidence is insufficient to support his conviction on this charge because his appointed attorney sometimes takes "criminal cases for nothing at all." This testimony certainly does not demand a finding that appointed counsel would have agreed to take *this case* pro bono. Defendant previously retained this lawyer for his divorce, and counsel charges an hourly fee of $150 for civil work. In our view, evidence that defendant allowed an application for appointed counsel to be submitted in his name, knowing that the application contained deceptively misleading and false information about the true state of his finances, and thereafter obtained and accepted the services of appointed counsel is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of violating OCGA § 16-8-5 as alleged in the indictment.

8. Defendant additionally contends the trial court erred "when it refused Defense Counsel the right to question a witness regarding . . . funds belonging to [defendant] which had been frozen by Court

order." We agree with the trial court that the subsequent freezing of the discovered assets is not relevant to defendant's intent at the time he submitted the deceptive and false application for an attorney to be provided at County expense.

*Judgments affirmed. Andrews and Ruffin, JJ., concur.*

DECIDED APRIL 21, 1999.

*Sidney L. Storesund*, for appellant.

*Garry T. Moss, District Attorney, Cecelia Harris, Assistant District Attorney*, for appellee.