A00A0239. DAVIS v. THE STATE.
(535 SE2d 528)

MILLER, Judge.

Jermaine Edward Davis, along with co-defendants Moody and Anderson, was tried before a jury and found guilty of two counts of armed robbery and one count of possession of a firearm during the commission of a felony. In seven enumerations of error, he (1) challenges the sufficiency of the evidence and complains of (2) the joint trial with his co-defendants, (3) the denial of his motion in limine, (4) an instruction on a prior inconsistent statement as substantive evidence, (5) the denial of a continuance to evaluate exculpatory evidence revealed only in mid-trial, and (6) the refusal to grant funds to hire an expert witness. Davis further excepts to the failure to give his requested instruction on "knowledge." We affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence revealed that Lawrence Price operated a mobile catering business, selling sandwiches and refreshments to workers at construction sites. Around 4:00 p.m. on December 22, 1995, Price and his granddaughter, Sherry Chaffin, arrived at the parking lot of a construction business to cash payroll checks and collect from people to whom Price had extended credit. In bank money bags, Price had more than $17,000 in cash. Before any employees came out to the parking lot, three men approached, and one spoke to Price. As Price turned around, he saw that one of the three carried a sawed-off shotgun. The gunman said, "just give me the money." Price was struck on the right ear from behind and fell back. Chaffin screamed as the gunman took $50 from her hand. As the gunman ran toward a yellow car with a black top, Price drew his nine millimeter automatic weapon and fired, hitting the vehicle several times. Price identified the getaway car as that depicted in State's Exhibits 1, 2, and 3.

Temarco Hawk also identified the car in State's Exhibits 1, 2, and 3 as his 1976 Regal. Hawk knew defendant Davis from sixth and seventh grade. On December 22, 1995, Hawk drove Davis, Moody,

and Anderson to a fenced-in parking lot, where he was told to just "wait." Moody exited first. Then Davis got out of the car and started talking to Moody, as in a huddle. Anderson exited the car and joined Davis and Moody. The three men walked away from Hawk's car, where he lost sight of them. But 30 seconds to a minute later, Davis came running back to the car with bulges in his coat. Anderson followed two seconds later with two green money bags. Davis jumped in the car as if panicked and scared. They said "go, go, go," and Hawk heard gunshots. Moody ran back to the car with something resembling a sawed-off shotgun in his hand. Hawk drove out of the parking lot to a subdivision, where the three jumped out of the car and ran for some bushes. The following day, Hawk's car was impounded by the Covington police. Davis telephoned Hawk and told him, " 'Don't plead guilty because they don't have no evidence or nothing on us. Don't plead guilty.' That's all [Davis] kept saying." Hawk did plead guilty to robbery versus armed robbery and was sentenced as a juvenile to 36 months probation, in exchange for his testimony.

Tabitha Height dated Davis for three or four years. At trial she denied ever telling the police that Davis, Moody, and Anderson had bragged about the armed robbery. Sergeant John Seabolt of the Covington Police Department was permitted to relate Height's December 28, 1995 statement that Davis, Moody, Anderson, and a fourth male Height knew only as Marco were at her house the previous Friday; that the four subjects were showing off a large amount of money and were dividing it; and that they said they obtained the money by robbing someone. Height knew the getaway car had already been impounded by the police. She informed Sergeant Seabolt that Davis gave his aunt some of the money to rent a van and that other proceeds of the robbery were used to rent a motel room where the thieves reveled.

1. The evidence of accomplice Hawk that Davis was a knowing participant, as corroborated by Height's statement to police,[1] is sufficient under the standard of *Jackson v. Virginia*[2] to authorize the jury's verdicts that Davis is guilty, beyond a reasonable doubt, as a party to the armed robbery[3] and as a party to the possession of a firearm during the commission of a felony[4] alleged in the indictments.

2. Since Height denied making any statement to the police after being called as a witness for the State, the trial court correctly instructed the jury they could consider proof of her prior inconsistent

---

[1] See OCGA § 24-4-8.
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Collins v. State*, 229 Ga. App. 210, 211 (1) (a) (493 SE2d 592) (1997).
[4] Id. at 211-212 (1) (b).

statement incriminating Davis, Moody, and Anderson as substantive evidence.[5]

3. The trial court did not err in denying Davis's motion in limine to exclude any reference to his arrest being effectuated by a SWAT team.

> In *McClung v. State*, 206 Ga. 421, 423 [(57 SE2d 559) (1950)], it was said: " 'The flight of the accused, the time when and the place where arrested, the manner of the arrest, how he was armed, and whether he resisted, and all the circumstances connected with the arrest, we consider proper evidence to be submitted to the jury to be weighed by them for what they are worth.' *Wayne v. State*, 56 Ga. 113 (5), 119 [(1876)]."[6]

Here, the trial court's determination that the circumstances of defendant's arrest were more probative than prejudicial does not constitute an abuse of discretion and is affirmed.[7] Under Court of Appeals Rule 33 (a), *DeCastro v. State*,[8] relied upon by Davis, is not binding precedent but is physical precedent only since one judge concurred in the judgment only. Moreover, *DeCastro* acknowledges that all the circumstances of the arrest may be admitted.[9]

4. Davis next contends the grant of the State's motion to join the parties for trial was error, arguing that, because the evidence against him was weaker than the evidence against Moody, he was impermissibly found guilty by association.

The mere fact that testimony against one of two co-defendants is stronger than that linking the other to the crime does not demand a finding that the denial of a motion to sever (or the grant of a motion for joinder) is an abuse of the discretion committed to the presiding judge by OCGA § 17-8-4.[10] Nor is any abuse of discretion shown by joinder of these co-defendants, where a conspiracy or joint enterprise is established, the State's case is straightforward, Davis's alibi defense was not compromised by his co-defendants, and the jury was instructed to consider the State's case against each defendant individually.[11]

5. The fifth enumeration complains of the purported denial of a

---

[5] *Winn v. State*, 269 Ga. 145, 146 (2) (498 SE2d 56) (1998).

[6] *State v. Luke*, 232 Ga. 815, 816 (209 SE2d 165) (1974).

[7] *Conyers v. State*, 234 Ga. App. 830, 833 (1) (507 SE2d 842) (1998).

[8] 221 Ga. App. 83 (470 SE2d 748) (1996).

[9] Id. at 85 (1). Accord *Ivester v. State*, 252 Ga. 333, 335 (2) (313 SE2d 674) (1984).

[10] *Martin v. State*, 162 Ga. App. 703, 704 (2) (292 SE2d 864) (1982). Accord *Kelley v. State*, 248 Ga. 133, 136 (3) (281 SE2d 589) (1981).

[11] *Kesler v. State*, 249 Ga. 462, 469 (4) (291 SE2d 497) (1982). Accord *Story v. State*, 194 Ga. App. 187 (1) (390 SE2d 96) (1990).

request for a continuance. The record does not support this contention.

In mid-trial, Lieutenant Craig Treadwell of the Covington Police Department revealed that certain fingerprint evidence was arguably exculpatory, in that no usable prints were discovered inside Hawk's car, and that of the eight legible prints taken from the outside of the vehicle, none matched any of these three co-defendants. These are the results contained in a report from the State Crime Lab, which the State's attorney did not realize was in the file until the morning of trial. Davis disavowed seeking to strike the testimony relating the substance of the report, but did ask for a copy before cross-examination of the witness. The trial court ordered the State to immediately give each defendant a copy of that report and then recessed.

After the noon recess, the court ruled that the tardily produced written fingerprint report would not be admitted into evidence. When the court invited comment on this ruling, Davis expressed concern whether it was necessary to do additional research into the relevance of this exculpatory material and was further concerned whether the defense "at the very minimum need[s] time to be able to speak with someone regarding fingerprint evidence. . . ." But Davis never pursued this "concern" to obtain a ruling on this ambiguous request for a continuance. And in response to Davis's inquiry, the court confirmed that Lt. Treadwell was subject to cross-examination about anything in the report, whereupon direct examination of Lt. Treadwell resumed. Since Davis failed to elicit a final ruling on his so-called oral request for a continuance, we conclude this enumeration presents nothing for review.[12]

6. A related enumeration urges the trial court abused its discretion in refusing to authorize post-conviction funds to retain a fingerprint expert on behalf of an indigent. Davis argues that "only an expert could enlighten the appellant or the court as to the extent that he may have been able to exploit the exculpatory fingerprint evidence." We disagree.

> The grant or denial of a motion for appointment of an expert witness lies within the sound discretion of the trial court, and where the defendant's conviction does not rest entirely on the State's expert evidence, and the State's

---

[12] *Green v. State*, 194 Ga. App. 343, 345 (4) (390 SE2d 285) (1990), aff'd, 260 Ga. 625 (398 SE2d 360) (1990). Accord *Medlock v. State*, 264 Ga. 697, 698 (449 SE2d 596) (1994); *Dover v. State*, 250 Ga. 209, 212 (4) (296 SE2d 710) (1982).

expert is not shown to be incompetent or biased, the trial court does not abuse its discretion in denying such motion.[13]

Here, defendant's conviction is not based upon expert opinion testimony or fingerprint evidence. To the extent that the complete absence of any defendant's fingerprints is exculpatory,[14] that is obvious to the juror of ordinary intelligence and does not need the explication of an expert witness. Consequently, the trial court did not abuse its discretion in refusing to continue the case or in refusing to appoint an expert witness in this instance.[15]

7. Davis next contends the trial court erred in refusing to give his written request to charge on the definition of knowledge, taken from the pattern charge, Council of Superior Court Judges, Suggested Pattern Jury Instructions (2nd ed.), Vol. II: Crim. Cases, Part 3 (H). But the only support Davis gives in his brief for this contention consists of four sentences which recite that a written request was submitted; the court declined to give this instruction; Davis reserved his exceptions to the charge; and the court erred by not giving the requested instruction. There are no citations of authority.

The mere repetition or rephrasing of an enumeration of error without more is not the argument anticipated in Court of Appeals Rule 27 (a) (3).[16]

> Argument is defined as a reason given in proof or rebuttal, or a coherent series of reasons offered. Webster's New Collegiate Dictionary (1976). The central element is reason. The function of argument in a brief is to supply the reason why the court should support the contentions of that party.[17]

Since Davis's claim of error with respect to the charge is unsupported by citations of authority or argument, that enumeration is deemed abandoned, pursuant to Court of Appeals Rule 27 (c) (2).[18]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

---

[13] (Citations and punctuation omitted.) *Carter v. State*, 237 Ga. App. 703, 704 (1) (b) (516 SE2d 556) (1999).

[14] This absence of forensic confirmation authorizes inculpatory inferences, since Hawk could have wiped the car when he repaired the bullet holes, which is consistent with the complete absence of usable prints on the inside. Also, the car was exposed to the elements for several days before police attempted to lift fingerprints.

[15] See *Carter v. State*, supra, 237 Ga. App. at 706 (1) (b).

[16] *Green v. State*, 208 Ga. App. 1, 2-3 (2) (429 SE2d 694) (1993).

[17] (Citation and punctuation omitted.) *Joint Venture v. McDaniel*, 224 Ga. App. 716 (1) (481 SE2d 836) (1997).

[18] *Pickens v. State*, 225 Ga. App. 792, 800 (7) (484 SE2d 731) (1997).

*Westmoreland, Patterson & Moseley, John L. Strauss*, for appellant.

*Alan A. Cook, District Attorney*, for appellee.