## A01A0909. SHELTON v. THE STATE.
(556 SE2d 540)

ANDREWS, Presiding Judge.

Richard Shelton was convicted by a Fulton County jury of one count of theft by taking and two counts of armed robbery. On appeal, he claims the trial court erred in (1) failing to suppress evidence, (2) refusing to sever the charges for trial, and (3) impermissibly placing his character in issue. For reasons which follow, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). So viewed, the evidence shows that on June 17, 1996, Arthur Montgomery intended to leave his BMW at an automobile detailing shop. Montgomery saw a man outside the shop who said that he was a shop employee. The man drove Montgomery back to his office, but never took the car back to the detailing shop. Montgomery identified Shelton as the man who took his BMW. On August 13, 1996, Robert Barnes got into his Mercedes automobile in the underground parking area below his condominium residence. A man forced him to relinquish the car keys at gunpoint and then drove away. The victim identified Shelton as the gunman. On August 24, 1996, Brent Haygood had just entered his Mercedes, which was in a parking lot in midtown Atlanta, when he heard a tap on the driver's side window. Haygood exited the car, and a man placed a gun against his forehead and told Haygood that he was taking the car. When Haygood refused, the man fired the gun but failed to injure Haygood. The man then took the car. Haygood identified Shelton as the perpetrator.

1. Shelton claims that the trial court erred in denying his motion to suppress the evidence developed when the police made an allegedly unlawful search of his landlady's premises. Shelton rented a bedroom at the home of Celestina Dismuke. At the time of the search, he had been living there three weeks. He did not have a key and depended on Dismuke or her daughter to gain access to the house. On August 29, 1996, police received a report of a stolen Mercedes

automobile at the Dismuke residence. Officer Gee and two other officers went to investigate. Gee knocked on the front door, but no one answered. Standing outside a chain-link fence around the house, the officers saw that in the unenclosed carport was a vehicle partially covered with a tarp. A Mercedes symbol was visible on the hubcaps. After talking with neighbors who confirmed the automobile was a Mercedes, Gee went into the garage and recorded the car's vehicle identification number. From the number, the officers learned that the vehicle had been reported stolen in a carjacking. The Mercedes belonged to Barnes.

Dismuke, who had been in the shower when the police first knocked on her door, told the officers the Mercedes was not hers and she had no idea how it got in her carport. While the officers were standing on the porch, Shelton came out and told the officers that he had bought the Mercedes from a friend. Shelton gave the police two different names. The police told Shelton he was under arrest and would have to leave with them. Shelton replied that he needed to go put on a shirt. Dismuke gave the police permission to enter her house, and Officer Davidson followed Shelton back to the room where he was staying. When the officer entered the room he saw a wallet, car keys, and a gun lying on the dresser. The officer seized the gun. A shell casing recovered from the site of the Haygood carjacking was ejected from this gun.

Shelton argues that the evidence stemming from the arrest at the Dismuke residence led the police to suspect him in the car thefts from Barnes and Haygood and his subsequent photographic identification by those victims. He maintains that the evidence which led the police to charge him for the crimes at issue here was derived from the "poisonous tree" of an illegal search. We disagree.

"The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy in the premises searched." *In the Interest of M. H.*, 247 Ga. App. 84, 85 (543 SE2d 390) (2000). Shelton argues that he had a privacy interest in the curtilage of the house where he was staying. The constitutional protections regarding searches and seizures have been held to extend to the curtilage of houses and apartments. See *State v. Gallup*, 236 Ga. App. 321, 323 (1) (b) (512 SE2d 66) (1999). However, "[i]t is the recognized relationship of the person with the property searched that gives rise to the protective device of suppression." (Punctuation omitted.) *State v. Jackson*, 201 Ga. App. 810, 813 (1) (412 SE2d 593) (1991). Accordingly, it is Shelton's expectation of privacy in the carport, and not his landlady's, which is the relevant question. Evidence shows that Shelton was a three-week tenant with no key to the residence or independent access to his room and that he had not secured permission to use the carport and had not used the carport previously with the landlady's knowledge or consent. Given

that Shelton (1) had been living in the residence a very short time, (2) had no independent control of the premises, and (3) did not establish that he could legitimately expect to have use of or had previously used the area which was searched, we find that there was a substantial basis for the trial court's ruling that Shelton did not have a legitimate privacy interest in the carport, and thus no standing to object to the police's search of the stolen Mercedes parked within it. See *Johnson v. State*, 246 Ga. App. 197, 198 (1) (540 SE2d 212) (2000) ("When reviewing a trial court's decision on a motion to suppress, this Court's responsibility is to ensure that there was a substantial basis for the decision.").

Shelton's reliance on *Wilson v. State*, 254 Ga. 473 (330 SE2d 364) (1985), is misplaced. There the evidence sought to be suppressed was a pair of gloves found in the defendant's bedroom in his grandmother's house, where he was residing. Our Supreme Court found that the defendant "presumably had the right to exclude people other than his grandmother from the premises." Id. at 477 (3). The search in question here was not in Shelton's bedroom, and Shelton did not show he had the right to exclude people from the premises. *Minnesota v. Olson*, 495 U. S. 91 (110 SC 1684, 109 LE2d 85) (1990), and *Bunn v. State*, 153 Ga. App. 270 (265 SE2d 88) (1980), are also factually distinguishable. The United States Supreme Court found the defendant's lack of a key to the residence in which he was seized to be unimportant in its analysis. The defendant in *Olson*, however, was a guest and was seized inside the host's home. Here, Shelton's lack of a key is indicative of a lesser degree of control of the premises in general and is relevant to his right to exclude others from access to the carport. In *Bunn*, we found the constitutionally protected zone of privacy extended to the immediate vicinity of a tenant's patio in the rear of his apartment, although not to the common areas in the apartment complex. *Bunn*, supra at 274 (2). But it does not automatically follow that because a renter has a privacy interest in the curtilage of his apartment that Shelton had an expectation of privacy in the curtilage of the Dismuke residence. The evidence indicates that Shelton had a more limited expectation of privacy in the premises than would have been the case had he been a tenant with control of the house.

Shelton also argues that, even if he did not have standing to challenge the search of the carport, the seizure of the gun was unlawful and all evidence derived from that seizure should be suppressed. However, Shelton was under arrest when the gun was seized. He was aware that an officer was accompanying him back to his room so he could get a shirt. The seizure of the gun was incident to the arrest. See OCGA § 17-5-1; *Hunter v. State*, 190 Ga. App. 24, 25 (2) (378 SE2d 352) (1989). Shelton further claims that the statements he made that he owned the car, and evidence that he gave two different names, should also be suppressed. However, Shelton had not been

arrested when he made these statements, and he has no basis to exclude them. The trial court did not err in denying Shelton's motion to suppress.

2. Shelton next contends that his right to due process was violated by the trial court's failure to sever the charges against him. When two or more offenses are joined solely because they are of the same or similar character, the defendant may have the offenses severed for trial. *Davis v. State*, 159 Ga. App. 356 (1) (283 SE2d 286) (1981). However, "a trial court may join offenses for trial if the offenses are based on the same conduct, on a series of connected acts, or on a series of acts constituting parts of a single scheme or plan." (Punctuation and footnote omitted.) *Moore v. State*, 246 Ga. App. 163, 166 (4) (539 SE2d 851) (2000). "The determination whether to grant or deny a motion to sever the trial of separate criminal offenses is within the discretion of the trial court." (Citation omitted.) *Roman v. State*, 245 Ga. App. 225, 226 (2) (537 SE2d 684) (2000).

Counts 2 and 3 involved Shelton, within a two-week period, approaching the victim as he entered his Mercedes and stealing the car at gunpoint. These two counts clearly are based on the same conduct or series of connected acts. Count 1, which involved the theft by deception of a BMW automobile approximately two months earlier, is more problematical. The similarities among the three counts include theft of a luxury car and no attempt by Shelton to disguise himself, but the first count is dissimilar from the other two in that it did not involve force, and two months separate the first instance from the second. Nevertheless, in all three incidents Shelton chose to obtain the car keys directly from the driver, as opposed to "hot wiring" the car or taking it by another method when the driver was not around. After reviewing the record, we find the three charges sufficiently encompass a series of connected acts to justify their being joined for trial. The trial court did not abuse its discretion in denying Shelton's motion to sever.

3. Lastly, Shelton claims the trial court erred by admitting evidence of his arrest for traffic offenses on November 3, 1996. Although Shelton was taken into custody at the Dismuke premises on August 29, 1996, he was released before he was served with the arrest warrants for the theft and armed robbery charges. The November 3, 1996 arrest led to the service of those warrants. The arresting officer testified that he stopped Shelton for speeding and running a stop sign. Shelton fled in the car after the initial stop, crashed into a parked car, and then fled on foot. When he was finally apprehended, Shelton gave the police a false name. The car Shelton was driving had been reported stolen.

Shelton argues that the circumstances of the November 3, 1996 arrest were unrelated to the crimes for which he was being tried and evidence of the arrest improperly put his character into issue. We

agree. Evidence of an arrest is generally subject to the same standards of relevancy and materiality applicable to other evidence. See *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000). Circumstances surrounding an arrest are often admissible as part of the res gestae, because "the arrest was contemporaneous or closely related in time to the offense and bore a logical relation to the offense." (Punctuation omitted.) *DeCastro v. State*, 221 Ga. App. 83, 85 (1) (470 SE2d 748) (1996) (physical precedent only). If the circumstances around an arrest are not part of the res gestae and are not relevant and material to the questions in issue, there is no basis for its admission into evidence. Id. Here, the circumstances of Shelton's November arrest were prejudicial, but did not have any logical relation to the issues at trial. Evidence that Shelton was driving a stolen car on November 3, 1996, without more, is not probative of his guilt with regard to the theft by taking and armed robbery charges. The State relies on *Davis v. State*, 244 Ga. App. 345, 347 (3) (535 SE2d 528) (2000), and *McClung v. State*, 206 Ga. 421, 423 (57 SE2d 559) (1950), but the arrest in *Davis* was apparently for the charges at trial rather than, as here, an arrest for an unrelated incident which then led to the serving of the arrest warrants for the crimes at issue. In *McClung*, a subsequent arrest for auto theft was relevant to show an attempt to flee arrest from murder charges. See *McClung*, supra at 423 (1). It was error for the trial court to deny Shelton's motion in limine to exclude evidence of the November 3, 1996 arrest. However, we do not find that a reversal is warranted. "[E]rror alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error." (Punctuation and footnote omitted.) *Humphrey v. State*, 249 Ga. App. 805, 807 (1) (549 SE2d 144) (2001) (applying harmless error analysis to erroneous admission of similar transaction evidence). Given the eyewitness testimony of the victims, who had closely observed an undisguised Shelton, as well as the compelling physical evidence, we find that there is no reasonable probability that the results of the trial would have differed if the evidence of Shelton's November 3, 1996 arrest had been excluded.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED NOVEMBER 15, 2001.

*Zell & Zell, Rodney S. Zell*, for appellant.
*Paul L. Howard, Jr., District Attorney, George W. K. Snyder, Jr., Assistant District Attorney*, for appellee.