A01A2198. THOMAS v. THE STATE.
(557 SE2d 483)

ELDRIDGE, Judge.

A Fulton County jury found Scilentto Thomas guilty of aggravated assault and theft by taking.[1] These offenses arose when Thomas arranged to have two men beat an Anthony's Pizza deliveryman about the head and shoulders with a wooden stick and a metal pipe so that Thomas could obtain an order of chicken wings and four large pizzas for free. He appeals, claiming that the trial court erred in permitting the introduction of similar transaction evidence; per-

---

[1] Thomas was indicted for armed robbery and found guilty of the lesser included offense of theft by taking.

mitting the introduction of impermissible character evidence; permitting testimony in violation of reciprocal discovery provisions; and denying a motion for directed verdict upon the sufficiency of the evidence of armed robbery. Upon careful review, we affirm Thomas' conviction.

1. We find merit in Thomas' claim that the similar transaction was insufficiently similar to warrant admission into evidence.

> Generally in a criminal trial, proof that the defendant committed a distinct, independent, and separate offense is highly and inherently prejudicial, irrelevant and inadmissible, even if it is a crime of the same sort for which the defendant is being tried, unless there is some logical connection between the independent act and the crime for which the defendant is being tried, from which it can be said that proof of one tends to establish the other. The prosecutor seeking to introduce a defendant's independent offense must establish in a pre-trial hearing, among other things, the similarity between the independent act and the crime for which the defendant is being tried.[2]

In this case, the prior act introduced at trial involved a recently committed (but unindicted) armed robbery wherein Thomas put a gun to a convenience store clerk's head and demanded money; upon the clerk's compliance, Thomas made off with $700. As it applies to the instant case, the State claimed that the prior act demonstrated a common "scheme or plan." The State argued similarity between the armed robbery of the store clerk and the beating of the pizza man in that "[t]hey are similars in that the case of Scilentto Thomas these happened within a month and a half time frame. It was in the same general vicinity. . . . And, again, the third thing wherein it is similar is that it demonstrates his attempt to obtain money forcefully from people." We cannot, however, fathom any similarity between the two acts so as to demonstrate a coherent "scheme or plan," especially since — contrary to the State's representation at the Uniform Superior Court Rule 31.3 (B) hearing — the instant act did not involve an "attempt to obtain money forcefully from people." It is true that a prior act need not be identical in order to be admissible on the trial of a case.[3] It also remains very true that the test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents.[4] But we do not abandon the

---

[2] (Citations omitted.) *Hudson v. State*, 271 Ga. 477, 479 (2) (521 SE2d 810) (1999).

[3] *Smith v. State*, 264 Ga. 46 (2) (440 SE2d 188) (1994).

[4] *Farley v. State*, 265 Ga. 622, 624 (458 SE2d 643) (1995).

principle that there must be *some* "logical connection" between the independent act and the charged offense so that proof of one tends to prove the other through a nexus other than the fact that both acts show defendant's bad character.[5]

In the current incident as contrasted with the prior act: there were two physical assailants, not one; a stick and pole were used, not a handgun; pizza was the motive, not money; an apartment was involved, not a business establishment; the victim was beaten, not threatened with a firearm; and, while clearly a party to the crime, Thomas did not commit the actual assault on the victim as he did in the prior act, but instead arranged/urged its commission by others so that he would not have to pay for his food. The only apparent similarities between the independent act and the charged offense were that both involved a "taking" and there was a general proximity in time and place; this is insufficient to establish a common "scheme or plan" to do an act. Since the State failed to demonstrate a logical connection between the prior act and the indicted offenses so as to show a common scheme or plan, the trial court erred in admitting the similar transaction evidence.

Nevertheless, "error alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error."[6] The erroneous admission of similar transaction evidence "may be harmless if there is such overwhelming evidence of the defendant's guilt that it is highly probable that the error did not contribute to the guilty verdict."[7]

In that regard, a witness at trial positively identified Thomas as the person who came to his apartment at the Charlestown Homes on the incident date to use the telephone and order pizza. The Anthony's Pizza delivery ticket was introduced showing delivery to apartment 27-E at the Charlestown Homes, which apartment was unrented and supposed to be unoccupied at the time of the incident. The victim positively identified Thomas as the man who answered the door of apartment 27-E and took the pizza from him. Thomas then told the deliveryman to "come on in" while he got money to pay for the food. When the deliveryman did so, two accomplices came from behind the front door and beat the victim about the head and shoulders, one with a pipe and one with a wooden stick. The victim testified that when he fought back, one of the assailants looked at Thomas who was standing on the stairs and stated, "he's fighting back." After being hit several more times, the victim backed out of the apartment

---

[5] *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

[6] (Punctuation omitted.) *Tanner v. State*, 243 Ga. App. 640, 643 (2) (533 SE2d 794) (2000).

[7] *Moore v. State*, 242 Ga. App. 249, 250 (1) (a) (529 SE2d 381) (2000).

and got into his truck. He testified that before he left, he looked back at the apartment and Thomas "was coming, he came down, went through the hallway with the food still in his hand. . . . Kind of smirk, giggle on his face. Headed in towards the living room part." One of the assailants, fourteen-year-old Carlos Brown, pled guilty to the offense and positively identified Thomas as the person who planned the robbery of the pizza man; gave Brown the stick with which to hit the victim; and told Brown and the other assailant, Marcus Franklin, to hit the victim after Thomas got the pizza. No evidence was offered to rebut the State's case.

"Given such unequivocal eyewitness identification, it is highly unlikely that the admission of the similar transaction evidence contributed to the verdict."[8] This is especially true since the similar transaction went more to the offense of armed robbery, for which offense the jury found Thomas not guilty. "Thus, this claim of error presents no basis for reversal."[9]

2. Next, Thomas contends that his character was impermissibly put into issue by the admission of evidence of a separate crime of "criminal trespass" when the manager of the Charlestown Homes testified that apartment 27-E was vacant on the incident date and that neither Thomas nor anyone else had authority to be in that apartment.

There is no record of any objection being made to such testimony. "Because [Thomas] made no contemporaneous objection, he cannot now raise this error. The failure to object to the admission of evidence at trial constitutes a waiver of the right to raise the issue on appeal."[10]

Further, the testimony about which Thomas complains was part of the circumstances surrounding the commission of the charged offense. As such, it was admissible as part of the res gestae of the crime.[11]

Finally, the apartment manager did not testify that Thomas or anybody else was in apartment 27-E; she testified only that the apartment was supposed to be vacant. She knew nothing about the incident and did not know Thomas. On its face, then, the apartment manager's testimony did not "allege . . . that he committed the crime of criminal trespass," as Thomas asserts before this Court. Accordingly, this enumeration of error has no factual basis.

3. Thomas contends that "the trial court erred by failing to grant

---

[8] *Humphrey v. State*, 249 Ga. App. 805, 807 (1) (549 SE2d 144) (2001).

[9] Id.

[10] (Punctuation omitted.) *Priester v. State*, 249 Ga. App. 594, 598 (3) (549 SE2d 429) (2001).

[11] *Myrick v. State*, 242 Ga. App. 892, 894 (531 SE2d 766) (2000).

appellant's motion to exclude the defendant's statement after the state violated their reciprocal discovery obligations by failing to turn over the statement until the day of trial." What follows the enumerated error is a virtually unintelligible argument that incorporates Thomas' objection to testimony from a similar transaction witness, Detective Strozier, because Strozier's name was not served ten days prior to trial; Thomas' claim that some of Strozier's notes were not included in the supplemental police report served upon Thomas and thus discovery was violated; a *Brady*[12] claim that the State withheld exculpatory evidence: "we believe [Strozier's notes] contained crucial evidence that they're [the State] not submitting in court as to the identity of the perpetrator in that crime [similar transaction] and things that led to the identity or identification of the perpetrator"; and a claim that the trial court erred in not striking Strozier's testimony in its entirety for discovery violations.

However, nowhere in such argument does Thomas address any discovery violation involving a statement made by "defendant" to any person; nowhere does Thomas cite to any place in the record where a statement made by him was introduced into evidence; and nowhere does Thomas cite to a trial court's ruling with regard to the exclusion of any statement made by him. In short, Thomas' argument has nothing whatsoever to do with his error as enumerated. "Enumerations may not be enlarged by brief on appeal to cover issues not contained in the original enumeration."[13]

Further, we have reviewed the voluminous 51 pages of discovery served upon Thomas by the State, which included all police reports; supplemental police reports; inculpatory statements from nonwitnesses and accomplices; evidence property records; juvenile reports on nontestifying accomplices; a similar transaction notice with attached police reports; and supplemental similar transaction police reports. We find that the discovery served was more than sufficient to satisfy the requirements of OCGA § 17-16-4. In an apparent attempt not to "violate" discovery, it appears that more information than required by statute was supplied. Such excess, while unnecessary, certainly weakens considerably any defense claim that more should have been given or that the State withheld exculpatory information.

We also find as unmeritorious Thomas' claim of a *Brady* violation. Nothing in Strozier's testimony and the several similar transaction police reports that were served on Thomas provides any basis for a belief that Strozier's notes would be other than inculpatory. And Thomas' asserted, completely unsupported "belief" to the contrary is

---

[12] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[13] (Punctuation omitted.) *Gabbard v. State*, 233 Ga. App. 122, 123 (2) (503 SE2d 347) (1998).

simply insufficient to show that the State withheld exculpatory evidence in violation of *Brady*.[14] In fact, it was established through Thomas' cross-examination that Strozier's notes would show that the similar transaction victim easily identified Thomas as the perpetrator of the armed robbery because Thomas was a regular customer at the convenience store. The similar transaction victim testified at trial to the same fact. Thus, not only is this evidence clearly *inculpatory*, there is no *Brady* violation when disputed evidence is brought out at trial.[15]

Finally, Thomas failed to request a continuance, an opportunity to review any of Detective Strozier's notes, or any other form of relief other than to strike Strozier's testimony in its entirety or, alternatively, for the court to grant a mistrial.

> Before the harsh sanction of excluding evidence will be imposed by the trial court under OCGA § 17-16-6, the defendant must show both that he was prejudiced and that the state acted in bad faith. [Thomas] did not make either showing. Consequently, the trial court did not abuse its discretion, under OCGA § 17-16-6, when it admitted [Detective Strozier's testimony] over defense counsel's objection.[16]

4. The jury acquitted Thomas of armed robbery under Count 1 of the indictment and, instead, found him guilty of the lesser included offense of theft by taking. Accordingly, any claim of error regarding the trial court's failure to direct a verdict on armed robbery is moot.[17]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED DECEMBER 14, 2001.

*Alicia C. Head*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[14] *Merritt v. State*, 248 Ga. App. 709, 713 (548 SE2d 427) (2001).

[15] *Davis v. State*, 261 Ga. 382, 385 (8) (b) (405 SE2d 648) (1991).

[16] (Footnote omitted.) *Romero v. State*, 247 Ga. App. 724, 726 (545 SE2d 103) (2001).

[17] *Moore v. State*, 242 Ga. App. 208, 211 (2) (529 SE2d 210) (2000); *Jennings v. State*, 226 Ga. App. 461 (486 SE2d 693) (1997); *Cornwell v. State*, 193 Ga. App. 561 (1) (388 SE2d 353) (1989); *Middlebrooks v. State*, 191 Ga. App. 542, 543 (1) (382 SE2d 385) (1989).