## A02A0095. JONES v. THE STATE.
(568 SE2d 807)

Sмітн, Presiding Judge.

Terry Jones (a/k/a Arthur Lee Parham and Bobby Johnson) was convicted of robbery by force after he grabbed a woman's neck, then pried a diamond studded ring off her finger and fled. As a result of Jones's lengthy criminal history, the trial court imposed recidivist sentencing. Jones's motion for new trial, as amended, was denied. For reasons not relevant to this appeal, Jones obtained permission to file an out-of-time appeal. In this appeal, Jones contends that the trial court erred in four evidentiary rulings and in part of the jury instruction. We find merit to two of his claims, but in light of the overwhelming evidence of Jones's guilt, we affirm.

Construed to support the jury's verdict, the evidence showed that while the victim, a female college student, was walking toward the Vine City MARTA station, she noticed Jones approach another pedestrian who "disregarded whatever he said" and "shooed him off." Jones had an Afro-type hair style, an average build, and a light complexion, and he was wearing blue jeans and a distinctive black jacket emblazoned with the name and emblem of the Chicago Bulls. When Jones walked up to the young woman, he feigned a foreign accent. He claimed that he had already paid for lodgings but that due to his language problems could not find the place. Flashing what appeared to be a wad of folded dollar bills, Jones offered to pay her to help find the place he claimed to seek. The victim refused to help and directed Jones to a nearby telephone. Without warning, Jones suddenly grabbed the victim around her neck and demanded to know if she had any jewelry. Then, twisting her hand, Jones pried a gold ring from her finger. Immediately, Jones absconded with her property, a gold ring accented in the middle with small diamonds.

Sergeant Charles Hendrix of the Morris Brown College Police Department heard the woman's frantic screams. The victim told Hendrix that she had just been robbed by a man who had grabbed her by her throat and stolen her ring. Hendrix learned that the perpetrator had fled on foot and had just turned a nearby corner. Knowing the suspect was traveling in a northern direction, Hendrix drove the victim to where he anticipated the suspect would proceed. About five minutes after the robbery, they saw a man walking toward them at a fast pace. The victim spotted the Chicago Bulls jacket and recognized her assailant. She told Hendrix, "That's him. That's him. That's the guy that took my ring." While being handcuffed, Jones spat the ring from his mouth onto the hood of the police car, and the victim yelled, "That's my ring." In court, the victim identified Jones as the man who robbed her and identified the wad of fake bills taken from Jones. Hendrix recalled seeing bruises on both sides of the victim's neck.

Jones was taken to the Morris Brown police station and advised of his *Miranda* rights. After completing certain paperwork, Hendrix transported Jones to the Fulton County jail. Hendrix testified that just after removing Jones from the patrol car, "[Jones] turned to me and told me that 'I just left a knife in the rear seat of your vehicle. Because you were so nice to me, I wanted you to know I had put the knife in the rear seat of your vehicle.'" After turning Jones over to jail officials, Hendrix immediately checked the cruiser "and in the back seat I found a knife, five, six inches long." Hendrix added, "The knife was laying [sic] in the back seat where the suspect had informed me it would be." Over defense objection, Jones's statement and the knife were allowed in evidence. The trial court found that Jones's remarks about the knife were spontaneous, voluntary, and not the result of any police interrogation or prodding.

The trial court also allowed evidence about a similar incident offered by the State to show Jones's course of conduct. Before admitting evidence of the similar transaction, the court gave a limiting instruction. In the similar incident, the male victim of a hoax perpetrated by Jones at a MARTA station testified that Jones approached him with the excuse of needing help in making a telephone call. When the victim removed his wallet, Jones grabbed $60 and fled. In that case, Jones entered a guilty plea to theft by taking.

Jones elected to testify at trial.[1] Although admitting he intended to steal from the victim in this case, Jones defended on the basis that he was attempting to perpetrate a nonviolent scam. While still on direct, this sequence in questioning occurred:

> DEFENSE COUNSEL: Let me ask you this. Did you have any weapons on you?
> DEFENDANT: No, Ma'am.
> DEFENSE COUNSEL: Did you have a knife on you?
> DEFENDANT: No, Ma'am.
> DEFENSE COUNSEL: What were you wearing that day?
> DEFENDANT: Some black jeans and a black leather coat, Bulls.
> DEFENSE COUNSEL: And did you have this knife on you?
> DEFENDANT: No, Ma'am.
> DEFENSE COUNSEL: Did you have a knife on you?
> DEFENDANT: No, Ma'am.
> DEFENSE COUNSEL: A knife similar or a shorter knife, a bigger knife?
> DEFENDANT: No, I don't even carry weapons.

---

[1] Under oath, he identified himself as Arthur Lee Parham.

DEFENSE COUNSEL: All right. Did you ever tell the police that you put a knife in their car?

DEFENDANT: No, I never told them nothing [sic] like that, period.

At this point, outside the presence of the jury, the prosecutor successfully argued that Jones had "opened the door" to information about his prior conduct in carrying a weapon that resulted in his convictions in Illinois for armed robbery and armed violence. Jones appeals his conviction.

1. Jones contends that the trial court erred in admitting his comments about a knife found during the booking process. He claims that testimony about the knife lacked probative value. He points out that the incident outside the jail was not part of the res gestae or the circumstances leading up to his arrest.

Evidence acquired in connection with a defendant's arrest is neither automatically relevant nor automatically prejudicial. *Benford v. State*, 272 Ga. 348, 350 (528 SE2d 795) (2000). "[S]uch evidence is subject to the same standard of relevancy and materiality applicable to other evidence." Id. at 350. In *Benford*, the Supreme Court held that the trial court erred in admitting evidence that when arrested the defendant possessed a .22 caliber pistol, even though the indicted offense charged the use of a shotgun, a firearm. Id.

Here, although the State argues that "Jones's current possession of the knife was substantially relevant to show his existing propensity or willingness to use violence in effectuating his robberies," we find otherwise. Jones was being tried solely for one count of robbery by force. No allegation of a weapon was involved. The fact that a knife was found in the patrol car shed no light on whether Jones committed the indicted offense. Compare *Simmons v. State*, 251 Ga. App. 682, 684 (1) (555 SE2d 59) (2001) (possession of handgun at time of arrest relevant when crime charged committed with handgun). No relevant basis was presented to support the admission of this prejudicial evidence. Nevertheless, in light of the overwhelming evidence that Jones committed the indicted offense of robbery by force, we find no reasonable probability that the results of the trial would have been different had this evidence been excluded. See *Shelton v. State*, 252 Ga. App. 444, 448 (556 SE2d 540) (2001).

2. Jones asserts that the trial court erred in allowing the knife itself in evidence. We agree that admission of the knife was error. *Chisholm v. State*, 231 Ga. App. 835, 841 (7) (500 SE2d 14) (1998), overruled on other grounds, *Murphy v. State*, 270 Ga. 72, 74 (2) (c) (508 SE2d 399) (1998). Jones was not charged with any crime involving the knife found in the police vehicle. The knife was not relevant or material to any issue in the case. See *Chisholm*, supra. But, in

light of the overwhelming evidence that Jones committed robbery by force, the error was harmless. *Wilson v. State*, 274 Ga. 637, 639 (5) (555 SE2d 725) (2001); *Benford*, supra.

3. Jones contends that the trial court erred in admitting a certified copy of a prior conviction that was presented as similar transaction evidence. Relying upon *Eiland v. State*, 213 Ga. App. 838, 839 (1) (445 SE2d 765) (1994), Jones claims that it was error to admit the indictment because it showed he had been charged with robbery by sudden snatching, a crime for which he was not convicted.

Although objectionable material should be redacted or the indictment kept from the jury, this is a case in which the overwhelming evidence of the defendant's guilt allows affirmance. Compare *Eiland*, supra. Other evidence of the prior crime was presented, and the testimony of the victim of that crime supported the charge in the indictment. See *Wagner v. State*, 253 Ga. App. 874, 876-877 (1) (c) (560 SE2d 754) (2002).

4. Jones argues that the trial court impermissibly allowed the State to inject character evidence into the case. He claims that the State engaged in improper impeachment because the issue of the knife was collateral to any issues relevant to the trial and not admissible for any relevant purpose. He also claims that the State did not establish that he was the perpetrator of an armed robbery in Chicago.

After Jones testified that he did not carry weapons, the State was entitled to impeach Jones with evidence that Jones had carried weapons to commit the armed robbery and armed violence offenses. See *Francis v. State*, 266 Ga. 69, 71 (2) (463 SE2d 859) (1995). In presenting evidence on that narrow issue, the State offered a certified and exemplified copy of his convictions for armed robbery and armed violence and agreed to redact two convictions for aggravated battery. However, when Jones was asked by the prosecutor, "Sir, isn't it true that you have been convicted of armed robbery and armed violence in Cook County, Illinois, in 1982?" Jones responded, "I know that I been [sic] convicted of a burglary in Cook County, but I don't recall no [sic] armed robbery being on my record, period, to be truthful with you, sincerely, truthfully." Although Jones now takes issue with whether the State proved that he was the perpetrator of the armed robbery in Cook County, Jones's ostensible lack of memory about that conviction did not constitute a denial of that crime. In any event, Jones failed to deny his conviction for armed violence and also introduced the fact of his conviction in Cook County for burglary.[2] In

---

[2] Although the certified copy of the convictions provided by the circuit clerk in Cook County names the offender as Bobby Johnson, Jones has been a man of many identities. A Georgia Criminal History Report, not entered in evidence, indicates that Jones has used

these circumstances, Jones failed to show that admission of the certified and exemplified copy of his convictions was error.[3] See *Hudson v. State*, 271 Ga. 477, 481 (2) (521 SE2d 810) (1999) (prior conviction used for purposes of impeachment need not be similar).

5. Jones contends that the trial court improperly instructed the jury that it must reach a unanimous verdict to convict or acquit him of the indicted offense of robbery by force before it could consider a lesser included offense. He claims that by instructing the jury to reach a unanimous verdict, the trial court suggested the sequential method of analyzing the indicted charge and the lesser included offense. See *Kunselman v. State*, 232 Ga. App. 323, 325 (501 SE2d 834) (1998) (pattern instruction avoids the possibility that jurors will mistakenly believe that a unanimous acquittal is required before consideration of lesser offense).

The transcript belies this claim. After defining robbery by force, the trial court charged on the lesser offense of theft by deception. The transcript does not show that the jury was required to render a unanimous verdict on the indicted offense before considering the lesser offense. See *Camphor v. State*, 272 Ga. 408, 414-415 (6) (d) (529 SE2d 121) (2000). The instruction correctly tracked the pattern charge on lesser included offenses. See *Camphor*, supra at 415, n. 5. There was no error. See *Duggan v. State*, 225 Ga. App. 291, 296 (4) (483 SE2d 373) (1997) (no error where trial court did not insist on unanimity on the greater offense before consideration of the lesser offense).

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED JULY 11, 2002.

*Sharon L. Hopkins*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

more than fourteen aliases, ten different Social Security numbers, and ten different dates of birth.

[3] In the sentencing phase, the State presented certified and exemplified copies from Florida, Georgia, and Illinois of four prior felony convictions.