A05A0017. STRAHAN v. THE STATE.
(614 SE2d 227)

BARNES, Judge.

In February 1999, a jury convicted Lance Strahan of kidnapping, three counts of armed robbery, and two firearms offenses, and the trial court sentenced him to multiple consecutive life sentences. Strahan immediately filed a motion for new trial, followed in August 1999 by a motion for appointment of appellate counsel. The trial court denied the motion for new trial in March 2003, and granted Strahan's motion for an out-of-time appeal in December 2003. This appeal was

---

docketed in August 2004. Strahan contends on appeal that insufficient evidence supports his convictions and that the trial court erred in admitting evidence of a similar transaction. While we agree that the similar transactions were improperly admitted, we find that error harmless and affirm.

1. We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997).

Viewed in that light, the evidence at trial established that Strahan, his girlfriend, and his girlfriend's child had lunch at a restaurant called Sue's Grill on May 16, 1998. The cook testified that Strahan was a daily customer at the restaurant, and that she knew his face and voice but not his name. The cook and a helper testified that Strahan returned alone a short time later. The helper was alone in the dining area, and asked if she could assist him. He asked for a drink, but when she turned to ask him which flavor, he was gone. The helper then went to the kitchen to tell the cook about the exchange.

Another restaurant employee testified that she was in the office and her three-year-old was in the hall when a man came in behind her, hit her on the head, and pulled her into the kitchen. The cook and the helper heard a loud booming noise before Strahan came into the kitchen through the office door, holding the third woman by the hair and pointing a handgun. He hit the back of her head again with his gun, opening a gash that began bleeding, and forced her and the other women face down on the floor. Strahan then forced the cook to open the register, removed the cash, then asked her where the restaurant's "safety box" was, threatening to shoot the child if the women did not give him all their money. After the cook replied that they had no safety box, Strahan made the victims crawl to the closet to retrieve their pocketbooks, kicking and cursing at them. He retrieved money from their wallets and made the women take their clothes off so he could remove the money from their pockets. Then he left, warning the women not to move for 20 minutes.

As soon as Strahan left, the cook got up and locked the door while the helper dialed 911. The cook then ran next door to the adjoining motel office to tell the owner about the robbery and describe the robber to him. She knew that the robber used to live in the motel, but that the owner had kicked him out because he had no money. The owner thought that he knew the identity of the man she described, but only knew the man had a first or last name of "Lance." He

reviewed his registration receipts and found the registration card of the man he was thinking of, whose name was Lance Strahan. He gave the card to the police officers who had arrived to investigate the robbery, and told them that Lance usually stayed at the adjoining motel or at a motel across the street. He had checked out of the adjoining motel, and the clerk across the street said he was not there either.

Meanwhile, the police were still investigating at the restaurant. The two women who had seen the robber gave their description. One of the officers answered the restaurant phone, and a female voice said, "I know who did that," who robbed those people. The female said the robber was "Lance," who sometimes lived in room 141 of the adjoining motel, and that she lived in room 110. An investigator went to room 110 to interview the caller, who said she had seen the man she knew as Lance walking briskly from the restaurant across the parking lot just before the police arrived. The caller confirmed at trial that she saw the defendant walking from the direction of the restaurant toward the road on the day of the robbery, but she could not say he was leaving the restaurant.

Using the name on the motel registration form, the investigator assigned to the robbery obtained a picture of Strahan and placed it in a photo lineup with five other individuals of similar complexion, hair, and size. The next day, the two victims who had seen the robber's face gave descriptions of the robber, then positively identified Strahan from the photo lineup. The investigator thus obtained an arrest warrant and went to Strahan's mother's house, where he saw Strahan exit a taxi and go inside as he pulled up. The investigator went in and arrested Strahan, and found new clothes and receipts dated the previous afternoon, after the robbery took place.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Strahan guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Strahan contends that the trial court erred in admitting evidence of his previous two burglary convictions, arguing that the earlier crimes were not similar to the crimes for which he was on trial. He also asserts that the State failed to establish and the trial court failed to find that the burglary evidence was admissible to establish any specific purpose, but instead admitted it to show a laundry list of purposes without determining which were applicable.

We will reverse a trial court's decision to admit evidence of a similar transaction only if the court has abused its discretion. *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998). After a hearing pursuant to Uniform Superior Court Rule 31.3 (B), the trial court must determine whether the State has shown three things: (1)

that it seeks to introduce evidence of the independent offense for an appropriate purpose and not to show the defendant's bad character; (2) that sufficient evidence establishes that the accused committed the independent offense; and (3) that a sufficient connection or similarity exists between the independent offense and the crime charged, so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

"The test . . . is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." (Citation and punctuation omitted.) *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989). If the purpose of the similar transaction evidence is to prove the defendant's identity, then "a long list of similarities between or among the crimes might be necessary to show that the crime on trial bears the defendant's 'criminal signature.' " Id. (evidence defendant committed prior manslaughter admissible in murder trial). Other purposes may be appropriate, such as those that

> demonstrate that the independent offense or act: is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged.

(Citation and punctuation omitted.) *Williams v. State*, supra, 261 Ga. at 642, n. 2.

In this case, Strahan pled guilty to the former offenses, two burglaries committed four years earlier on May 19, 1994, and thus the State established that Strahan committed those offenses. In the brief accompanying its notice of intent to submit evidence of similar transactions, the State argued, "In this case, the Defendant's identity[,] intent, motive, plan, scheme, bent of mind, absence of mistake or accident, or course of conduct is established by overwhelming similarity of the facts and [Strahan's] conduct in the two (2) sets of offenses at issue."

At the motions hearing, the State did not address the purpose for which the similar transaction would be submitted, but referred to its brief in arguing that the burglaries committed in 1994 were similar to the armed robbery committed in 1998. Specifically, the State

argued in its brief that the burglaries and robbery were all a mile or two from Strahan's residence; Strahan entered through a kitchen door in one burglary and tried to go into a back room during the robbery; all offenses occurred during daylight in the month of May; Strahan was involved with another individual "at least at some time and in some way connected to the offenses"; after all of the offenses, Strahan went to various stores with his criminal proceeds and left his name with the proprietors; and all of the offenses involved stealing someone else's property.

After Strahan argued that the crimes were not similar at all, the court ruled that the similar transaction "evidence, if [the State] intends to use it, can be used in this case. All of it is subject to different interpretations." When Strahan noted that the third prong required to admit such evidence required the State to show that proof of the former offense tended to prove the charged offense, the court replied, "That's a matter of interpretation," and denied Strahan's request for a certificate of immediate review.

The trial judge, who did not conduct the motions hearing, issued a written order granting the State's motion to admit the similar transactions evidence the day before trial began, holding that information about the burglaries was admissible

> for the proper purpose of showing the identity, intent, bent of mind, propensity and course of conduct of the Defendant. There is sufficient evidence to identify defendant as having committed the proffered offenses and there is a sufficient similarity to demonstrate that this similar transaction is logically relevant to material issues in this case.

Strahan filed a motion in limine regarding evidence of the earlier offense. The parties addressed the motion before trial, and the trial court ruled, "The Court without comment is going to deny the motion in limine." Finally, the court charged the jury,

> The law provides that evidence of other offenses of this defendant which are similar or connected to the offense for which the defendant is on trial may be admissible and may be considered for the limited purpose of showing, if it does, the identity of the perpetrator, or the state of mind, or knowledge or intent of the defendant in the crimes charged in the case now on trial.

The previous two burglaries and the subsequent armed robbery are not at all similar to each other. In the burglaries, Strahan, who was 17, and another young man broke back windows and climbed into

two unoccupied houses, where they stole televisions and other electronic devices which they immediately attempted to pawn. In this armed robbery, no evidence suggests that an accomplice worked with the perpetrator; the robber walked into an open restaurant with a handgun and brutalized the three women he found there, stole cash, and immediately went shopping with the money. While the State argues that we have previously found an attempted burglary, a movie theater robbery, and the theft of a truck sufficiently similar to an armed robbery, three burglaries, and two aggravated assaults, that case involved a police officer who was working with a crime ring that committed all of these acts, and thus proof of the former crimes tended to prove the latter. *Morrill v. State*, 216 Ga. App. 468, 476 (11) (454 SE2d 796) (1995).

In this case, pretermitting whether the State established a proper purpose for introducing the evidence and showed that proof of the similar transaction tended to prove the armed robbery, but see *Williams v. State*, supra, 261 Ga. at 642-643, the crimes were improperly admitted because they were not similar.

> The only apparent similarities between the independent act and the charged offense were that both involved a "taking" and there was a general proximity in time and place; this is insufficient to establish a common "scheme or plan" to do an act. Since the State failed to demonstrate a logical connection between the prior act and the indicted offenses so as to show a common scheme or plan, the trial court erred in admitting the similar transaction evidence.

*Thomas v. State*, 253 Ga. App. 58, 60 (1) (557 SE2d 483) (2001) (prior armed robbery not similar to assault on pizza deliveryman and theft of pizzas). See also *Jones v. State*, 226 Ga. App. 721, 724 (1) (487 SE2d 618) (1997) (child molestation not similar to attempted murder); *Walraven v. State*, 250 Ga. 401, 408 (4) (b) (297 SE2d 278) (1982) (incest not similar to a "bathtub" murder).

The erroneous admission of similar transaction evidence, however, may be harmless error if the State presents such overwhelming evidence of the defendant's guilt that "it is highly probable that the error did not contribute to the guilty verdict." *Moore v. State*, 242 Ga. App. 249, 250 (1) (a) (529 SE2d 381) (2000). In this case, two of the three robbery victims identified Strahan from a photo lineup and again at trial. A neutral eyewitness saw him hurrying away from the direction of the restaurant toward the street around the time of the robbery and called the restaurant to tell them who Strahan was. After the victims described the robber, who was a regular customer at the restaurant, the adjoining motel owner knew who they were talking

about and retrieved Strahan's registration card from the last time he stayed there. Overwhelming evidence points to Strahan as the lone robber, and thus we conclude that the admission of his prior burglary convictions was harmless error.

Strahan argues that this error must be harmful, as the first two times he was tried for these offenses, the juries deadlocked and the court declared mistrials. The only difference between those trials and this one, he contends, is that the similar transaction evidence was presented to the jury this time. We do not, however, have the transcripts of the previous trial to compare to this one, and even if we did, the jury makeup would be different and the witnesses' testimony may have been delivered differently. A hundred factors can differ from one trial to the next, and we cannot find that this evidence alone tipped the balance for this jury.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED APRIL 28, 2005.

*Peter D. Johnson,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.