## A05A0143. GOLDSBY et al. v. THE STATE.
### (615 SE2d 592)

RUFFIN, Chief Judge.

An Oconee County jury convicted John and Richard Goldsby of manufacturing methamphetamine, trafficking in methamphetamine, conspiracy to manufacture methamphetamine, and conspiracy to traffic in methamphetamine. On appeal, both assert multiple enumerations of error. For the reasons that follow, we affirm their convictions, but vacate their sentences and remand to the trial court for resentencing.

On appeal, we view the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence.[1] "We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions."[2] Viewed in this light, the evidence shows that brothers John and Richard Goldsby were in Athens on the evening of Friday, October 11, 2002. John and Richard met Sammy Cronan and Cherie Lackey at the Howard Johnson motel in Athens. Cronan testified that he had known John and Richard for about five years and that John had taught him how to make methamphetamine. Prior to meeting in Athens, the three men discussed making methamphetamine.

According to Cronan, while at the motel, he, John and Richard did some of the preparatory work necessary to make methamphetamine. They peeled lithium batteries and crushed ephedrine pills.

John asked Lackey's permission to use her truck, and told her he was leaving his keys if she needed to use his car while they were gone. The three men then left the motel in the truck. Supplies for making methamphetamine, including ether, a large tank of anhydrous ammonia, epsom salts, camp fuel, mason jars and coffee filters, were in the back of the truck. Both John and Richard left their cars in the motel parking lot.

The three men drove to a property owned by relatives of Lackey in nearby Oconee County. There were three mobile homes on the property, one of which was occupied by Jeff and Kelli Thornton. The

---

[1] See *Clark v. State*, 271 Ga. App. 534 (1) (610 SE2d 165) (2005).
[2] Id.

Thorntons were awakened at 4:00 or 4:30 a.m. by a pickup truck coming down their driveway and backing up almost to their front door. Three men exited the pickup truck, and the Thorntons recognized Cronan but did not know the other two men. The other two men were wearing shorts and t-shirts, with dark hair, and were described as "husky." At trial, Kelli Thornton identified these two men as John and Richard Goldsby.

The three men stripped and cleaned batteries, filled jars from the anhydrous ammonia tank in the back of the truck, and put ingredients into a five-gallon water cooler. The three took turns stirring the cooler's contents, which appeared to give off fumes that caused the men to retch and gag. The men then poured the contents of the cooler into jars. According to Cronan, after the liquid was poured out, "a lot of trash" remained in the cooler.

After watching the men, Jeff Thornton called his brother, William Thornton, who lived next door. William Thornton looked outside and saw three men with "miner lights on their head[s]." William and Jeff Thornton watched the men for some time and discussed whether to confront the men or to call the sheriff's department. Jeff Thornton was hesitant to confront the men because he could see that one of them had a pistol in the back of his pants. He eventually called the sheriff's department when the smell became overpowering.

After Jeff Thornton called the sheriff's department, William Thornton left his house for work. Cronan approached him and asked if he could borrow a clean bucket. As William Thornton drove away, he saw an Oconee County deputy sheriff arriving.

Cronan testified that a deputy sheriff arrived when they were "getting ready to start the process to go from a liquid to a solid." John and Richard, who were behind Jeff and Kelli Thornton's mobile home, fled. However, Corporal Byron Smith stopped Cronan.

Corporal Smith smelled and saw a number of items consistent with the manufacture of methamphetamine. Deputy James Fulcher arrived shortly thereafter, and he and Corporal Smith discovered a metal tank of ammonia and various chemicals, and liquid-filled mason jars which gave off an odor of ammonia. Cronan was handcuffed and put in a patrol car.

Based on information given by Cronan, a lookout was issued for John and Richard Goldsby, two heavyset males. A few minutes later, Deputy Jason Higgins was canvassing the area and located a man walking along the side of the road. Deputy Higgins noted that the man was sweating heavily, out of breath, and had scratches on his arms and legs. Deputy Higgins asked the man if he was all right, and the man first responded that he was all right and then stated that he had gotten into a fight at a friend's house and had left there. Deputy

Higgins asked the man his name, and when the man responded "John Goldsby," Deputy Higgins took him into custody.

Upon arriving at the scene, Special Agent Mark Lavender of the Georgia Bureau of Investigation smelled an odor consistent with methamphetamine labs, and saw jars of unknown liquid and the cooler, which was still emitting a "smoke-like vapor." Agent Lavender and another officer opened the cooler and found a lump of solid material in the bottom. The solid material in the cooler, which weighed 1,074.2 grams, tested positive for ephedrine and methamphetamine.

A subsequent search of Cronan and Lackey's motel room revealed items used in the manufacture of methamphetamine, including half-gallon glass jars, muriatic acid, propane, sulfuric acid, alcohol, lithium batteries, a mortar and pestle, an electric blender, coffee filters and rubber tubing.

### John Goldsby

1. On appeal, John challenges the constitutionality of OCGA § 16-13-31, which provides, in pertinent part,

> [a]ny person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine . . . commits the felony offense of trafficking in methamphetamine or amphetamine.[3]

According to John, the statute violates the equal protection clause because it punishes him for trafficking in addition to manufacturing even though there was no evidence that he had great quantities of useable methamphetamine. In a related enumeration of error, John contends that the statute is unconstitutionally vague because it does not sufficiently define "mixture."

John waived his right to challenge this statute on constitutional grounds because he did not raise such challenges at trial. "Challenges to the constitutionality of a statute must be made at the first opportunity, and it is too late to raise such question after a guilty verdict has been returned by the jury."[4] Here, John did not raise these alleged constitutional infirmities before the jury rendered its verdict, instead raising them in an amended motion for new trial. "It is

---

[3] OCGA § 16-13-31 (e).

[4] (Punctuation omitted.) *Kolokouris v. State*, 271 Ga. 597 (1) (523 SE2d 311) (1999).

well-established that a criminal defendant may not initiate a constitutional attack against a statute in . . . a motion for a new trial."[5] These constitutional challenges are not timely, and we cannot consider them on appeal.[6]

2. John alleges that two similar transactions by him should not have been admitted at trial because the evidence of these transactions was obtained in violation of his Fourth Amendment rights and its introduction was unduly prejudicial to his case. Specifically, John objects to the admission of two incidents, one in North Carolina and one in South Carolina, in which traffic stops led to searches and the discovery of drugs and drug paraphernalia. John argues that, in the North Carolina incident, he was stopped without reasonable suspicion, and in the South Carolina incident, he was subjected to an illegal search after a traffic stop concluded. Pretermitting whether the trial court erred in admitting these similar transactions, we find that admission was harmless.

"Harm as well as error must be shown when similar transaction evidence is improperly admitted."[7] Where there is strong evidence of the defendant's guilt, such that "it is highly unlikely that the admission of the similar transaction evidence contributed to the verdict," the admission of improper evidence is harmless error.[8] In this case, multiple witnesses observed John participate in the manufacture of methamphetamine. Their testimony was corroborated by his presence, early in the morning, on foot, on a rural road near the crime scene, while his own vehicle was miles away. In light of the strong evidence against him, "we find that there is no reasonable probability that the results of the trial would have differed if the evidence . . . had been excluded."[9]

In a related claim of error, John submits that the trial court should not have admitted items seized in connection with the similar transactions. Specifically, he contends that the state should not have been permitted to "present[ ] a laundry list of items against [him] as part of its similar transaction evidence." When arrested in South Carolina, John had a firearm, hydrocodone, marijuana and methamphetamine in his possession. Police seized several handguns when John was arrested in North Carolina, and these items were also admitted into evidence by the trial court.

---

[5] *Perez-Castillo v. State*, 275 Ga. 124, 125 (562 SE2d 184) (2002). See also *Hardeman v. State*, 272 Ga. 361, 361-362 (529 SE2d 368) (2000).

[6] See *Lewis v. State*, 279 Ga. 69, 70 (2) (608 SE2d 602) (2005).

[7] *Bradford v. State*, 261 Ga. App. 621, 622 (583 SE2d 484) (2003).

[8] *Humphrey v. State*, 249 Ga. App. 805, 807 (1) (549 SE2d 144) (2001). See also *Thomas v. State*, 253 Ga. App. 58, 60 (1) (557 SE2d 483) (2001).

[9] *Johnson v. State*, 255 Ga. App. 721, 724 (3) (a) (566 SE2d 440) (2002).

The admission of evidence showing the commission of a different crime than the one charged "is subject to the same standard of relevancy and materiality applicable to other evidence. Thus, the admission or exclusion of this evidence lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion."[10] Again, however, pretermitting whether the trial court abused its discretion in concluding that the drugs and weapons were relevant or material to the crimes for which John was being tried, we find their admission harmless.[11] Given the substantial evidence of John's guilt, we find "no reasonable probability that the results of the trial would have differed" if this evidence had been excluded.[12] Accordingly, the admission of these items provides no basis for reversal.[13]

3. John argues that the trial court erred in admitting prejudicial character evidence. At trial, Cronan testified that he learned how to make methamphetamine from John. Although John's counsel objected, the trial court held that the statement was admissible as part of the res gestae of the conspiracy to manufacture methamphetamine.

We will not overturn a trial court's determination that evidence is admissible as part of the res gestae unless that determination is clearly erroneous.[14] The rule in Georgia is that

> [t]he surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae, and it does not matter that the act is another criminal offense and does not tend to establish the main offense.[15]

Based on evidence in the record that John's teaching Cronan to make methamphetamine was a part of the main transaction of conspiracy to manufacture methamphetamine, the trial court did not err in admitting Cronan's testimony.[16]

---

[10] (Punctuation omitted.) *Nealy v. State*, 246 Ga. App. 752, 753 (1) (542 SE2d 521) (2000).
[11] See *Jones v. State*, 256 Ga. App. 470, 472-473 (1), (2) (568 SE2d 807) (2002).
[12] *Shelton v. State*, 252 Ga. App. 444, 448 (3) (556 SE2d 540) (2001).
[13] See *Crews v. State*, 269 Ga. App. 814, 816 (2) (605 SE2d 381) (2004).
[14] *Patel v. State*, 278 Ga. 403, 404-405 (2) (603 SE2d 237) (2004).
[15] (Punctuation omitted.) *Gumbs v. State*, 258 Ga. App. 230, 231 (2) (573 SE2d 485) (2002). See generally *Tesfaye v. State*, 275 Ga. 439, 443-444 (6) (569 SE2d 849) (2002).
[16] See *Dean v. State*, 211 Ga. App. 28, 31-32 (4) (438 SE2d 380) (1993).

John also asserts that Cronan's testimony constituted a "prior transaction" and thus the state was required to comply with the notice and hearing requirements of Uniform Superior Court Rules 31.1 and 31.3. As discussed herein, the evidence was admitted as part of the res gestae, and thus does not require such notice.[17]

4. John cites as error the admission of testimony concerning Cronan's statements to law enforcement officials about his accomplices. Specifically, John objects to Corporal Smith's testimony: (1) that Cronan told him that the two individuals who had been with him ran around the fence and into a wooded area; and (2) that John fit the description given by Cronan. John argues that these statements were not admissible as part of the res gestae, but impermissibly bolstered Cronan's testimony.

A declaration, otherwise inadmissible as hearsay, is admissible as part of the res gestae when it accompanies an act, or is "so nearly connected therewith in time as to be free from all suspicion of device or afterthought."[18] John argues that Cronan's declarations to Corporal Smith are not admissible as res gestae because they were not free from afterthought. He points to the fact that Cronan initially denied any criminal activity and stated that he was there working on his truck.

Cronan's statements about the Goldsbys, however, were made within 15 or 20 minutes of his detention, at the first opportunity he had to speak to a law enforcement officer after the scene was secured. And hearsay statements made by an accomplice to an investigating officer at the time of arrest are admissible as res gestae.[19] Moreover, because Cronan testified at trial to the same statements reported by Corporal Smith, and was subject to cross-examination, the admission of Corporal Smith's testimony is harmless even if Cronan's statements had not been part of the res gestae.[20] Under these circumstances, this claim of error presents no basis for reversal.[21]

5. John asserts that he received ineffective assistance of counsel at trial because his attorney did not pursue a plea bargain and did not preserve objections to the admissibility of the similar transaction evidence. In order to show ineffective assistance of counsel, John "must prove that counsel's performance was deficient and that the deficient performance so prejudiced [John] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would

---

[17] See *Cantrell v. State*, 230 Ga. App. 693, 696 (2) (a) (498 SE2d 90) (1998).

[18] OCGA § 24-3-3.

[19] See *Heard v. State*, 257 Ga. App. 505, 507 (2) (571 SE2d 524) (2002).

[20] See id.; *Lyons v. State*, 266 Ga. App. 89, 90-91 (3) (596 SE2d 226) (2004).

[21] See *Taylor v. State*, 226 Ga. App. 339, 339-340 (1) (486 SE2d 601) (1997).

have been different."[22] We will affirm a trial court's ruling on a claim of ineffective assistance of counsel unless the ruling is clearly erroneous.[23]

John states that his attorney was ineffective because he never had a serious discussion about plea options with the prosecutor. At the hearing on John's motion for a new trial, trial counsel testified that while he mentioned John's interest in a possible plea bargain to the district attorney, the district attorney never responded. Thus, trial counsel did not aggressively pursue such plea.

In *Avans v. State*,[24] we found that, where no plea offer was ever made by the state, counsel's failure to initiate plea negotiations was not deficient professional conduct. Here, trial counsel initiated plea negotiations, but the district attorney did not respond. Moreover, trial counsel knew that his client would not plead guilty to trafficking. As counsel did not have a reasonable basis to believe that a plea could be negotiated, the trial court properly concluded that his actions in failing to pursue a plea did not constitute ineffective assistance of counsel.[25]

John also contends that trial counsel was ineffective because he failed to properly raise and preserve John's objections to the similar transaction evidence admitted at trial. Because we found that the admission of the similar transaction evidence was harmless, any alleged failure to object to the evidence would also be harmless and would not constitute ineffective assistance of counsel.[26]

6. Finally, John argues that the trial court erred in sentencing him on both manufacturing methamphetamine and trafficking methamphetamine. He states that these crimes merge for purposes of sentencing because the state presented only one trial exhibit containing methamphetamine. On appeal, the state expressly concedes that, given the evidence presented, the offenses should have merged.

For sentencing purposes, offenses merge as a matter of fact if the different offenses were proven with the same facts.[27] "[I]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1)."[28]

In Georgia, "[a]ny person who knowingly . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of

---

[22] *Davis v. State*, 267 Ga. App. 245, 245-246 (1) (599 SE2d 237) (2004).

[23] See id. at 246; *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

[24] 251 Ga. App. 575, 576 (554 SE2d 766) (2001).

[25] See *Bishop v. State*, 266 Ga. App. 129, 133 (4) (596 SE2d 674) (2004).

[26] See id.; *Franks v. State*, 278 Ga. 246, 258-259 (3) (599 SE2d 134) (2004).

[27] See *Bryan v. State*, 271 Ga. App. 60, 64-65 (4) (608 SE2d 648) (2004).

[28] (Punctuation omitted.) *Ruffin v. State*, 252 Ga. App. 289, 291 (2) (556 SE2d 191) (2001).

trafficking in methamphetamine."[29] The Goldsbys were indicted for trafficking in methamphetamine based on their possession of at least 400 grams of methamphetamine. They were also indicted for manufacturing methamphetamine. Both the trafficking and manufacturing charges arise from the methamphetamine found in the cooler, as no other quantity of methamphetamine was presented at trial.

In *Bryan*, we held that the offenses of manufacturing, possessing and possessing with intent to distribute methamphetamine merged because all were proven with one quantity of methamphetamine, a single jar of liquid.[30] Similarly, the Goldsbys were convicted of manufacturing and trafficking, which was inferred from the amount possessed. The state "used up" the methamphetamine in the cooler proving the manufacturing charge; there was not a separate quantity of methamphetamine it could then use to prove the trafficking charge.[31] Because the convictions were based on a single quantity, the material in the cooler, the convictions merge and the trial court erred in sentencing for both offenses.[32] We thus vacate the sentence and remand the case to the trial court for resentencing.[33]

### Richard Goldsby

7. Richard contends that the evidence against him was insufficient because the only testimony of his involvement in the crimes charged came from Cronan, an accomplice, and Kelli Thornton, who Richard claims is unreliable and inconsistent.

In Georgia, an individual may not be convicted of a felony solely on the testimony of an accomplice.[34] The accomplice's testimony "must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime [and] leading to the inference that he is guilty."[35] Slight evidence of the accused's participation from another source, however, will provide sufficient corroboration.[36]

---

[29] OCGA § 16-13-31 (e).

[30] *Bryan*, supra at 65.

[31] See *Sullivan v. State*, 178 Ga. App. 769, 771 (344 SE2d 737) (1986).

[32] See *Gooch v. State*, 249 Ga. App. 643, 648 (5) (549 SE2d 724) (2001); compare *Bellamy v. State*, 243 Ga. App. 575, 581 (5) (530 SE2d 243) (2000).

[33] We note that Richard does not raise this argument on appeal. As a void sentence may be corrected at any time, Richard's failure to raise the issue does not preclude the trial court from addressing his sentence as well as John's upon remand. See *Sledge v. State*, 245 Ga. App. 488 (537 SE2d 753) (2000) ("[I]f the original sentence is void, then a trial court may impose a new and valid sentence at any time.").

[34] See OCGA § 24-4-8.

[35] (Punctuation omitted.) *Thompson v. State*, 186 Ga. App. 421 (1) (367 SE2d 586) (1988).

[36] See id.; *Buxton v. State*, 186 Ga. App. 399 (367 SE2d 286) (1988).

Moreover, the corroborating evidence itself need not be sufficient to warrant conviction, but only tend to connect and identify [the] defendant with the crime. The corroborating evidence may consist entirely of circumstantial evidence and may include [the] defendant's conduct before and after the crime was committed. Whether the corroborating evidence is sufficient is a matter for the jury.[37]

Here, there was ample evidence corroborating Cronan's testimony that Richard participated in the manufacture of methamphetamine. Physical evidence found at the motel the next morning confirmed Cronan's testimony about the preparatory work done there. Lackey testified that Richard, John and Cronan left the motel, taking her pickup truck, which was found at the crime scene and contained items used to manufacture methamphetamine. It is uncontroverted that Richard left his vehicle at the motel and his keys with Lackey, as did John, which is consistent with both Cronan and Lackey's testimony that Richard went with John and Cronan that night. "Presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal [enterprise] may be inferred."[38] William, Jeff and Kelli Thornton all testified that they saw three men take part in "cooking" the methamphetamine on their property. And Kelli Thornton identified one of those men as Richard.

Although Richard challenges Kelli Thornton's identification of him, this argument "go[es] to the weight and credit to be given the evidence by the trier of fact and not to the sufficiency of the evidence. Whether the witness is credible and whether her [testimony] should be accepted are questions for the jury."[39] It is not the role of the appellate court to evaluate witness credibility.[40] Under the circumstances, the evidence was sufficient to sustain the jury's verdict.[41]

8. Next, Richard objects to the failure to grant a mistrial after a question by John's trial counsel impermissibly prejudiced Richard by placing him at or near the crime scene in the minds of the jury. According to Deputy Higgins, when he first encountered John, John stated that "he had gotten into a fight with his brother over at a friend's house and . . . had run away from over there."

---

[37] (Citations and punctuation omitted.) *King v. State*, 268 Ga. App. 811, 813 (1) (603 SE2d 88) (2004).

[38] (Punctuation omitted.) *Rambo v. State*, 266 Ga. App. 791, 792-793 (1) (598 SE2d 85) (2004).

[39] (Citation omitted.) *Willis v. State*, 241 Ga. App. 813, 814 (1) (527 SE2d 895) (2000).

[40] See id.; *McClure v. State*, 278 Ga. 411, 411-412 (1) (603 SE2d 224) (2004).

[41] See *Reeves v. State*, 244 Ga. App. 15, 18 (1) (c) (534 SE2d 179) (2000).

Following a *Jackson-Denno* hearing, the trial court ruled that Deputy Higgins could not refer to John's brother, but could say that John said he got into a fight at a friend's house. On direct, Deputy Higgins testified in accordance with the trial court's instructions. On cross-examination, however, John's counsel asked Deputy Higgins "[a]nd he said he'd gotten into a fight with his brother?" Although Deputy Higgins did not answer, Richard's counsel objected and moved for a mistrial.[42] The trial court denied the motion and instructed the jury that questions by counsel are not evidence and that "the previous question asked by John Goldsby's attorney should be ignored, disregarded, given absolutely no consideration in your determination of the issues in this case." The trial court asked the jurors if they understood the instruction, and they responded affirmatively.

On a motion for mistrial after improper testimony,

[a] trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact and/or the jury indicates that it can follow the instructions and will not consider any improper prejudicial statements or testimony.[43]

"Where a motion for mistrial is made on the ground of inadmissible matters being presented to the jury, the corrective measure to be taken by the trial court . . . is largely a matter of discretion, and where, as here, proper corrective measures are taken and there is no abuse of that discretion, a refusal to grant a mistrial is not error."[44] In this case, the trial court's curative instruction was thorough,[45] and the jury affirmed that it understood the instruction.[46] The trial court thus did not abuse its discretion by denying the motion for a mistrial.[47]

9. Richard claims the trial court erred in failing to dismiss a juror who allegedly read the front page of a newspaper containing an article about the case. We disagree.

Jim Goldsby, brother of the appellants, testified that, during a break in the trial, he saw a female juror bend down and look at a

---

[42] At trial, Richard also moved to sever and for a continuance. Because Richard did not argue or cite authority to support alleged error in the denial of these motions, his argument is deemed abandoned. *Hunter v. State*, 201 Ga. App. 9, 9-10 (2) (410 SE2d 204) (1991).

[43] *Allen v. State*, 259 Ga. 303, 304 (2) (379 SE2d 513) (1989).

[44] (Punctuation omitted.) *Jackson v. State*, 207 Ga. App. 190, 191 (2) (427 SE2d 566) (1993).

[45] See *Kennedy v. State*, 207 Ga. App. 798, 799 (2) (429 SE2d 167) (1993).

[46] See *Binns v. State*, 237 Ga. App. 719, 720 (2) (516 SE2d 583) (1999).

[47] See *Grant v. State*, 230 Ga. App. 330, 332 (2) (496 SE2d 325) (1998).

newspaper box containing the Oconee Enterprise. The Oconee Enterprise had an article on the front page about Cronan's sentencing, accompanied by his picture. The article also mentioned the Goldsbys. Jim Goldsby saw the juror's back from approximately 20 or 30 feet and believed that it was juror Powers.

The trial court questioned juror Powers, who denied looking at the newspaper. The trial court then asked all the jurors if they had seen the article. Another female juror stated that she glanced at the article as she walked by the newspaper box, but did not read it. The judge excused that juror. Richard contends that juror Powers should have been dismissed as well.

Whether juror misconduct occurred is a question of fact for the trial judge.[48] "Indeed, motions for new trial because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination."[49] Here, the evidence supports the trial court's determination that juror Powers did not engage in any misconduct. Jim Goldsby saw the back of a woman looking at a newspaper box from 20 or 30 feet away and thought it was juror Powers. Powers denied that it was her, and another juror admitted that she had glanced at the newspaper box. This evidence supports the trial court's conclusion that juror Powers did not engage in the alleged misconduct. Under these circumstances, the trial court did not abuse its discretion in refusing to dismiss juror Powers, and Richard is not entitled to a new trial on this basis.[50]

10. Richard argues that the trial court erred in not granting a mistrial when his character was impermissibly placed into evidence at trial.[51] When asked how he met Richard, Cronan testified that he had sold methamphetamine to Richard and his wife. Counsel moved for a mistrial. After a hearing, the trial court held that Cronan's statement was not admissible, denied a mistrial, and gave the jury a curative instruction.

Richard contends that the curative instruction was not sufficient to eliminate prejudice against him in the minds of the jury.

---

[48] See *Byrd v. State*, 251 Ga. App. 83, 85 (2) (553 SE2d 380) (2001).

[49] (Punctuation omitted.) Id.

[50] Id.; see *Lewis v. State*, 277 Ga. 534, 538-539 (3) (592 SE2d 405) (2004); *Shaw v. State*, 241 Ga. 308, 314 (16) (245 SE2d 262) (1978).

[51] Richard also suggests that the trial court erred in failing to sever his trial from that of his brother or to grant a continuance. However, he fails to demonstrate that he ever sought such relief or to provide any legal authority supporting his entitlement to relief. Thus, any error in this regard is waived. See *Habel v. Tavormina*, 266 Ga. App. 613, 617-618 (2) (597 SE2d 645) (2004).

Where a witness voluntarily injects into the trial improper and prejudicial matters, whether a mistrial must be granted or whether the effect can be corrected by instructions to the jury is a matter within the discretion of the trial court. The trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact.[52]

Georgia courts have held that curative instructions are adequate to remedy references to appellant being incarcerated for 22 years,[53] to appellant being on probation,[54] to appellant being arrested for DUI,[55] to appellant having a reputation for killing people,[56] and to appellant buying " 'dope.' "[57] A curative instruction is generally an adequate remedy when it is "promptly given and clearly inform[s] the jury that it should disregard the improper testimony."[58]

Here, the curative instruction was given promptly and instructed the jury to "completely disregard the answer to the previous question . . . [g]ive it no consideration whatsoever . . . [and] [e]rase it from your minds entirely." The trial court was authorized to conclude that this curative instruction prevented Cronan's testimony from having a prejudicial impact on Richard, and did not abuse its discretion in denying a mistrial.[59]

*Judgment of conviction affirmed, sentence vacated and case remanded for resentencing. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 6, 2005.

*Eberhardt & Hale, M. Eric Eberhardt, William C. Bushnell*, for appellants.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.

---

[52] (Punctuation omitted.) *Fulmer v. State*, 205 Ga. App. 679, 680 (3) (423 SE2d 300) (1992).
[53] See *Dukes v. State*, 273 Ga. 890, 893 (3) (b) (548 SE2d 328) (2001).
[54] See *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).
[55] See *Browning v. State*, 236 Ga. App. 893, 894 (2) (513 SE2d 779) (1999).
[56] See *Freeman v. State*, 278 Ga. 349, 351 (2) (c) (603 SE2d 214) (2004).
[57] *Mullins v. State*, 270 Ga. App. 271, 276 (5) (605 SE2d 913) (2004).
[58] *Dukes*, supra at 893.
[59] See id.